# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Taylor*, 2013 IL App (3d) 110876

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILL TAYLOR, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-11-0876 |
| Filed | February 8, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | After defendant was found unfit to stand trial for the first degree murder of his wife and the attempted first degree murder of a police officer and then found subject to involuntary commitment as a serious threat to public safety following extended treatment that failed to restore his fitness, his case was remanded for proceedings in which the trial court could review, pursuant to section 104-25(g)(2) of the Code of Criminal Procedure, the possibility of placing defendant in a less secure setting, such as the nursing home placement he sought. |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 03-CF-89; the Hon. Carla Alessio-Policandriotes, Judge, presiding. |
| Judgment | Remanded with directions. |

Counsel on
Appeal

Paul T. Donahue, of Joliet, for appellant.

James Glasgow, State's Attorney, of Joliet (Terry A. Mertel and Laura E. DeMichael, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Panel        JUSTICE LYTTON delivered the judgment of the court, with opinion.

Justices Carter and Holdridge concurred in the judgment and opinion.


**OPINION**

¶ 1        Defendant, Will Taylor, was charged with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2002)) and two counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2002)). Defendant was found unfit to stand trial. Following an extended period of treatment that was unsuccessful in restoring defendant's fitness, the court found that defendant was subject to involuntary admission and constituted a serious threat to the public safety. 725 ILCS 5/104-25(g)(2) (West 2010). The court remanded defendant to the Department of Human Services (DHS) for further treatment under section 104-25(g)(2) of the Code of Criminal Procedure of 1963 (Code). *Id.* Defendant appeals, arguing that his request for release to a nursing home for further treatment should have been both considered by the court and granted. We remand.

¶ 2                                        FACTS

¶ 3        On February 5, 2003, defendant was charged by indictment with two counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2002)) and two counts of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2002)). The indictment alleged that, on January 18, 2003, defendant shot and killed his wife, Hazel Taylor, and pointed a loaded weapon at a Joliet police officer. On December 9, 2003, the trial court found defendant unfit to stand trial, and he was placed in the custody of DHS for treatment.

¶ 4        After a discharge hearing on December 6, 2005, the court determined that there was sufficient evidence to sustain convictions for defendant on each count of the indictment. 725 ILCS 5/104-23(b)(1), 104-25(a) (West 2010). The court remanded defendant to DHS and extended his treatment for five years. 725 ILCS 5/104-25(d)(2) (West 2010).

¶ 5        Upon completion of defendant's extended period of treatment, he remained unfit for trial. On October 25, 2011, the court held a commitment hearing under section 104-25(g)(2) to determine whether defendant was subject to involuntary admission or constituted a serious threat to public safety. 725 ILCS 5/104-25(g)(2) (West 2010). The court did not consider

whether defendant's placement in a less secure setting was appropriate, stating that such evidence would be heard at a later hearing if defendant were remanded to DHS. See 725 ILCS 5/104-25(g)(2)(i) (West 2010).

¶ 6        The State presented the testimony of Dr. Amar Chawla, defendant's treating psychiatrist at Elgin Mental Health Center (EMHC) since 2006. Chawla testified that defendant suffered from vascular dementia, depressive disorder, alcohol-induced persisting dementia, alcohol dependence, cerebrovascular disease, hypertension, and non-insulin-dependent diabetes. Chawla testified that despite improvements in defendant's mental illnesses from electroconvulsive therapy, he still suffered from cognitive impairments and was unreliable in taking his daily medications.

¶ 7        Chawla opined that defendant was psychiatrically stable and was not a danger to himself or others. Chawla did not recommend releasing defendant into the community, but testified that defendant was not subject to involuntary admission and was appropriate for release into a less restrictive setting for outpatient mental health services. Chawla suggested release into Atrium nursing home, which utilized safety measures to ensure he did not leave the premises and would provide the assistance defendant required with activities of daily living.

¶ 8        Defendant presented the testimony of Michelle Evans, a licensed social worker who had treated defendant at EMHC since 2008. Evans testified that defendant's treatment team at EMHC concluded that he did not pose a danger to public safety. Evans further testified that the team also recommended defendant's release to Atrium nursing home.

¶ 9        The court found that defendant was subject to involuntary admission and was a serious threat to public safety. Defendant was then remanded to DHS in a secure setting for further treatment, with a maximum commitment date of January 18, 2063. 725 ILCS 5/104-25(g)(2) (West 2010). Defendant's motion to reconsider was denied by the trial court. Defendant appeals.

¶ 10                                              ANALYSIS

¶ 11        Defendant argues that the trial court erred in denying his request to be placed in a less restrictive environment for outpatient treatment, namely the Atrium nursing home. Specifically, defendant claims that the court should have considered this disposition at his section 104-25(g)(2) commitment hearing. As this issue concerns statutory construction, our review is *de novo*. *People v. Davison*, 233 Ill. 2d 30 (2009).

¶ 12        Section 104-25(g)(2) of the Code provides that when a defendant remains unfit for trial at the conclusion of his extended period of treatment (725 ILCS 5/104-25(d)(2) (West 2010)), the court must determine whether he is subject to involuntary admission under the Mental Health Code or constitutes a serious threat to the public safety. 725 ILCS 5/104-25(g)(2) (West 2010). If the State proves this by clear and convincing evidence, defendant shall be remanded to DHS for further treatment. 725 ILCS 5/104-25(g) (West 2010).

¶ 13        This section further provides:

"During this period of commitment, the original court having jurisdiction over the defendant shall hold hearings under [section 104-25(g)(2)(i)]. However, if the defendant

is remanded to [DHS], the defendant shall be placed in a secure setting unless the court determines that there are compelling reasons why such placement is not necessary." 725 ILCS 5/104-25(g)(2) (West 2010).

If defendant is not committed under this section, defendant must be released. 725 ILCS 5/104-25(g)(3) (West 2010).

¶ 14 The State argues that after the court found defendant unfit at the section 104-25(g)(2) hearing, the court's only decision was whether defendant should be remanded to DHS or released. The statute, however, states that if defendant is remanded to DHS, as he was in the instant case, he shall be placed in a secure setting unless "there are compelling reasons why such placement is not necessary." 725 ILCS 5/104-25(g)(2) (West 2010). Thus, the court had the authority to consider defendant's release to a less secure setting, such as a nursing home, and place him there if it found compelling reasons. See *id.*

¶ 15 The State further argues that defendant's placement in a nursing home should be addressed at a subsequent section 104-25(g)(2)(i) hearing. Section 104-25(g)(2)(i) provides that every 180 days after defendant is remanded to DHS under section 104-25(g)(2), the trial court must determine whether defendant is: (1) subject to involuntary admission; (2) in need of mental health services in the form of inpatient care; or (3) in need of mental health services but not subject to involuntary admission or inpatient care. 725 ILCS 5/104-25(g)(2)(i) (West 2010).

¶ 16 This section would encompass a defendant's request to be placed in a nursing home. However, if there are compelling reasons to put a defendant in a nursing home at the section 104-25(g)(2) commitment hearing, we find no reason for the court to wait for another hearing to make this determination. As such, at the commitment hearing, the court should have considered whether there were compelling reasons not to place defendant in a secure setting. See 725 ILCS 5/104-25(g)(2) (West 2010).

¶ 17 The State acknowledges that conditional release may sometimes be discussed at the section 104-25(g)(2) hearing, but notes that it was not addressed in the instant case because the court found that it should be addressed at a subsequent hearing. Due to the limited testimony on this issue, we cannot determine from the record whether defendant's placement in a less secure setting would have been appropriate under the circumstances. Therefore, we remand this case for further proceedings in which the trial court shall review, pursuant to section 104-25(g)(2), the appropriateness of defendant's placement in a less secure setting.

¶ 18                                    CONCLUSION

¶ 19 For the foregoing reasons, the judgment of the circuit court of Will County is remanded with directions.

¶ 20 Remanded with directions.