Opinion by JUDGE LOEB
¶ 1 Defendant, Atorrus Leon Rainer, appeals the trial court's order denying his Crim. P. 35(c) motion, which argued that his 112-year sentence is unconstitutional, pursuant to Graham v. Florida, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). As a matter of first impression, we conclude that, under the circumstances here, Rainer's aggregate sentence is functionally a life sentence without parole and, thus, constitutes cruel and unusual punishment under the Eighth Amendment. Accordingly, we reverse the order, vacate the sentence, and remand for resentencing.
I. Procedural History and Background
¶ 2 In 2000, when he was seventeen years old, Rainer burglarized an apartment, stealing a stereo. During the incident, he shot two victims multiple times with a handgun, seriously injuring them and leaving them in critical condition. Rainer was arrested and was charged and tried as an adult in the district court, pursuant to Ch. 283, sec. 1, § 19-2-517(1)(a)(II)(A), 1996 Colo. Sess. Laws 1640.
¶ 3 Following a jury trial in 2001, as pertinent here, the jury found Rainer guilty of two counts of attempted first degree murder, two counts of first degree assault, one count of first degree burglary, one count of aggravated robbery, and sentence enhancement counts for crimes of violence.
¶ 4 At the sentencing hearing, the parties agreed that Rainer was subject to mandatory statutory sentencing requirements under the then applicable statutory framework for crimes of violence, with a sentencing range of 72 to 224 years. Rainer's counsel argued for the minimum sentence under the statutory sentencing range (72 years) based on Rainer's age, low IQ, learning disability, and family situation. The prosecution asked the court to impose the maximum allowed aggregate sentence of 224 years. After hearing argument and statements from the victims and their family members, the trial court *523 sentenced Rainer to the Department of Corrections for the maximum sentences statutorily allowed: 48 years for attempted first degree murder of each victim, 32 years for first degree assault of each victim, 32 years for first degree burglary, and 32 years for aggravated robbery. The court ordered the sentences to run consecutively for a total prison term of 224 years, reasoning that this was the appropriate sentence given that Rainer had used a deadly weapon to inflict serious lifetime injuries on the victims.
¶ 5 Rainer filed a direct appeal, and in 2004, a division of this court affirmed the convictions but vacated the consecutive sentences for the first degree assault and attempted murder convictions, remanding with directions to impose concurrent rather than consecutive terms on those counts. People v. Rainer, (Colo.App. No. 01 CA 1401, Feb. 5, 2004) 2004 WL 1120876 (not published pursuant to C.A.R. 35(f) ). The mandate issued on June 13, 2004. On remand, the trial court resentenced Rainer for these counts to run concurrently rather than consecutively, and, consequently, reduced Rainer's original sentence of 224 years to 112 years. Also on remand, Rainer filed a motion for reconsideration of sentence and modification of mandatory sentence for a violent crime, which the trial court denied.
¶ 6 In January 2005, Rainer filed a motion for postconviction relief pursuant to Crim. P. 35(a) and (c), arguing that his sentence was illegal under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The trial court denied the motion without a hearing. Rainer appealed, and a division of this court dismissed the appeal as untimely filed.
¶ 7 Rainer then filed a Crim. P. 35(c) motion for postconviction review of the trial court's denial of his motion to suppress statements. The trial court summarily denied the motion, and, on appeal, a division of this court affirmed. People v. Rainer, (Colo.App. No. 06CA1765, Feb. 28, 2008) 2008 WL 525686 (not published pursuant to C.A.R. 35(f) ).
¶ 8 In 2008, Rainer filed a third motion for Crim. P. 35(c) postconviction relief, based on alleged ineffective assistance of counsel and various trial court errors. The trial court denied the motion on the basis that it did not have jurisdiction, because the mandate had not yet issued from Rainer's previous appeal. Rainer refiled this motion four months later after mandate had issued, and the trial court summarily denied it.
¶ 9 In March 2009, Rainer filed yet another motion for postconviction relief based on ineffective assistance of counsel, which the trial court denied. On appeal, a division of this court affirmed, holding that Rainer's ineffective assistance of counsel claims were successive. People v. Rainer, (Colo.App. No. 09CA0071, Feb. 11, 2010) 2010 WL 457332 (not published pursuant to C.A.R. 35(f) ).
¶ 10 In August 2010, after the Supreme Court's decision in Graham, Rainer filed another motion for postconviction relief pursuant to Crim. P. 35(c). He argued that, in light of Graham's newly established constitutional prohibition on sentences to life without parole for juvenile offenders who did not commit homicide, his 112-year sentence was unconstitutional. Specifically, Rainer asserted that his aggregate term-of-years sentence was the functional equivalent of a life sentence without the possibility of parole, and thereby constituted cruel and unusual punishment in violation of the Eighth Amendment, pursuant to Graham . The prosecution did not file a response to Rainer's motion.
¶ 11 In October 2010, the trial court denied the motion, ruling that Rainer was not entitled to relief under Graham for two reasons:
First of all, Defendant's sentence is not of the same nature as the sentence prohibited in Graham [life without parole for a nonhomicide juvenile]. Additionally, even if the Defendant's sentence was of the same nature of that discussed in Graham, he would still not be entitled to relief because the rule created in Graham will not be applied retroactively.
¶ 12 This appeal followed.
*524 II. Preliminary Issues
¶ 13 We first must address three interrelated preliminary issues before considering the merits of Rainer's constitutional claim: (1) whether Graham applies retroactively to Rainer's sentence; (2) whether Rainer's motion is time-barred under section 16-5-402, C.R.S.2012; and (3) whether his motion is successive under Crim. P. 35(c)(3)(VII). As discussed below, we conclude Graham applies retroactively to Rainer's sentence and that his Crim. P. 35(c) motion is neither time-barred nor successive.
A. Retroactivity
¶ 14 Rainer contends that the trial court erred in ruling that Graham does not apply retroactively to his sentence. We agree.
¶ 15 The summary denial of a Crim. P. 35(c) motion for postconviction relief without a hearing presents a question of law we review de novo. People v. Gardner, 250 P.3d 1262, 1266 (Colo.App.2010).
¶ 16 Rainer argued in his Crim. P. 35(c) motion that the rule announced in Graham should be applied retroactively to his sentence.[1] The trial court expressly rejected Rainer's argument.
¶ 17 In its ruling, the trial court relied on Edwards v. People, 129 P.3d 977, 980-83 (Colo.2006), which adopted the analytical framework for retroactivity set out in Teague v. Lane, 489 U.S. 288, 307, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The trial court here stated:
According to Teague, [a] new constitutional rule[ ] of criminal procedure generally should not be applied retroactively to cases on collateral review unless (1) it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe, or (2) it requires the observance of "those procedures that are implicit in the concept of ordered liberty." [ 489 U.S. at 307, 109 S.Ct. 1060.]
The first exception is not relevant because the Graham holding does not decriminalize a particular type of conduct.
To fall within the second exception, a new rule must fulfill two criteria: (1) "infringement of the rule must seriously diminish the likelihood of obtaining an accurate conviction"; and (2) "the rule must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." Edwards, 129 P.3d at 987 (quoting Tyler v. Cain, 533 U.S. 656, 665, 121 S.Ct. 2478, 150 L.Ed.2d 632 (2001) ).
Here, Defendant's sentence in no way diminished the accuracy of his conviction or the fairness of the proceeding. Because the rule created in Graham does not fall into either one of the categories adopted in Teague, it should not be applied retroactively.
¶ 18 We disagree with the trial court's analysis. To the contrary, we conclude that Edwards does not control here because that case applies only to new constitutional rules of criminal procedure, and, in our view, Graham created a new substantive rule of constitutional law.
¶ 19 "New substantive rules generally apply retroactively," and include rules that apply when a defendant "faces a punishment that the law cannot impose on him." Schriro v. Summerlin, 542 U.S. 348, 351-52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004). A rule is substantive rather than procedural "if it alters the range of conduct or the class of persons that the law punishes." Id. at 352, 124 S.Ct. 2519.
¶ 20 The rules announced by the Supreme Court in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (barring the death penalty for mentally retarded defendants), and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (barring the death penalty for juveniles), have consistently been applied retroactively as new substantive rules. See *525 In re Sparks, 657 F.3d 258, 261-62 (5th Cir.2011) (per curiam) ("the Supreme Court's decision in Atkins barring the execution of the mentally retarded has been given retroactive effect, as has the Court's decision in Roper " (citation omitted)); Little v. Dretke, 407 F.Supp.2d 819, 824 (W.D.Tex.2005) ; Baez Arroyo v. Dretke, 362 F.Supp.2d 859, 883 (W.D.Tex.2005), aff'd sub nom. Arroyo v. Quarterman, 222 Fed.Appx. 425 (5th Cir.2007) ; see also Cara H. Drinan, Graham on the Ground, 87 Wash. L.Rev. 51, 64-67 n. 108 (2012) (listing cases that have retroactively applied Roper and Atkins ).
¶ 21 Similarly, we conclude that the rule announced in Graham is a new substantive rule that should be applied retroactively to all cases involving juvenile offenders under the age of eighteen at the time of the offense, including those cases on collateral review. Like the rules in Atkins and Roper , Graham categorically recognizes "a punishment that the law cannot impose upon [a defendant]," Schriro, 542 U.S. at 352, 124 S.Ct. 2519, specifically, that it is categorically unconstitutional for nonhomicide juvenile offenders to face a sentence of life imprisonment without parole. See In re Moss, 703 F.3d 1301, 1302 (11th Cir.2013) (Graham set out a new rule of constitutional law); In re Sparks, 657 F.3d at 262 (Graham states a new and retroactive rule of constitutional law similar to Atkins and Roper ).
¶ 22 Even if Teague applied here, we would conclude that Graham applies retroactively because it also falls under the first exception set forth in Teague, which "should be understood to cover ... rules prohibiting a certain category of punishment for a class of defendants because of their status or offense." Penry v. Lynaugh, 492 U.S. 302, 330, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), abrogated on other grounds by Atkins, 536 U.S. at 321, 122 S.Ct. 2242 ; see also In re Moss, 703 F.3d at 1303 (Graham applies retroactively because it "prohibit[s] a certain category of punishment for a class of defendants because of their status or offense" (quoting Penry, 492 U.S. at 330, 109 S.Ct. 2934 )); In re Sparks, 657 F.3d at 262 ("Atkins and Roper both 'prohibit[ ] a certain category of punishment for a [certain] class of defendants because of their status or offense'; so too does Graham, which bars the imposition of a sentence of life imprisonment without parole on a juvenile offender." (citation omitted) (quoting Penry, 492 U.S. at 330, 109 S.Ct. 2934 )); Loggins v. Thomas, 654 F.3d 1204, 1221 (11th Cir.2011) (same).
¶ 23 Accordingly, we conclude that Graham applies retroactively to Rainer's case on collateral review because it introduces a substantive new constitutional rule and because it falls under the first Teague exception.
B. Timeliness
¶ 24 On appeal, the People contend for the first time that Rainer's motion is time-barred under section 16-5-402(1), C.R.S.2012 and that Rainer cannot establish justifiable excuse or excusable neglect for the untimely filing of his motion. Rainer acknowledges that his motion is untimely, but contends that, because his motion is based on the new substantive rule of law announced in Graham, he has established justifiable excuse and, thus, his motion should be considered on its merits. We agree with Rainer.
¶ 25 Whether a motion is untimely, or can be considered on the merits based on justifiable excuse or excusable neglect, is a matter of law we review de novo. Close v. People, 180 P.3d 1015, 1019 (Colo.2008).
¶ 26 The parties agree that Rainer's motion is properly characterized as a Crim. P. 35(c) motion. Section 16-5-402(1) imposes a three-year time limitation after the final judgment for a collateral attack on a defendant's non-class 1 felony convictions. Here, Rainer's motion was filed approximately six years after his conviction became final when the mandate issued from his direct appeal. People v. Hampton, 876 P.2d 1236, 1238 (Colo.1994).
¶ 27 However, section 16-5-402(2)(d), C.R.S.2012, provides an exception where "the failure to seek relief within the [three-year] period was the result of circumstances amounting to justifiable excuse or excusable neglect." "[T]he applicability of the justifiable excuse or excusable neglect exception must be evaluated by balancing the interests under the facts of a particular case *526 so ... that a defendant [has] the meaningful opportunity required by due process to challenge his conviction." People v. Wiedemer, 852 P.2d 424, 441 (Colo.1993). If a defendant's motion for postconviction relief is untimely, the defendant bears the burden of establishing justifiable excuse or excusable neglect. People v. Abad, 962 P.2d 290, 291 (Colo.App.1997).
¶ 28 A reviewing court has the discretion to address the merits of an untimely motion for postconviction relief if the motion is premised on newly arising authority of constitutional magnitude. People v. Gardner, 55 P.3d 231, 232 (Colo.App.2002) (citing People v. Kilgore, 992 P.2d 661 (Colo.App.1999) ; People v. Chambers, 900 P.2d 1249 (Colo.App.1994) ).
¶ 29 Accordingly, because Graham established a new rule of substantive constitutional law which was not previously available to Rainer before 2010, we conclude that he has established justifiable excuse under section 16-5-402(2)(d), and we choose to address his motion on its merits. Gardner, 55 P.3d at 232.
¶ 30 Contrary to the People's argument, Rainer had no legal basis for an Eighth Amendment challenge to his sentence prior to the announcement of Graham . There was no Colorado authority or decision of the United States Supreme Court prior to Graham that provided a juvenile convicted and tried as an adult with a constitutional right to challenge the imposition of a life sentence with or without the possibility of parole. Indeed, contrary to the dictates of Graham, existing case law in Colorado expressly precluded a court from using the age of a defendant as a factor in conducting a proportionality review of a defendant's sentence. See Valenzuela v. People, 856 P.2d 805, 809 (Colo.1993) ; People v. Fernandez, 883 P.2d 491, 495 (Colo.App.1994).
¶ 31 Thus, we hold that Rainer's motion is not time-barred under section 16-5-402(1).
C. Successiveness
¶ 32 We also reject the People's argument, again made for the first time on appeal, that we should decline to address Rainer's motion on its merits because the motion is successive.
¶ 33 A postconviction motion is properly denied as successive if it alleges claims that were raised and resolved, or that could have been presented, in a prior appeal or postconviction proceeding. See Crim. P. 35(c)(3)(VI)-(VII) ; People v. Rodriguez, 914 P.2d 230, 249 (Colo.1996). However, Crim. P. 35(c)(3)(VII)(c) provides an exception for "[a]ny claim based on a new rule of constitutional law that was previously unavailable, if that rule should be applied retroactively to cases on collateral review." Determining whether a claim falls under this exception requires a three-part inquiry: (1) whether the conviction is final; (2) whether the rule is new; and (3) if the rule is new, whether the rule meets the exceptions to nonretroactivity. People v. Wenzinger, 155 P.3d 415, 420 (Colo.App.2006).
¶ 34 It is undisputed that Rainer's conviction became final when the mandate issued from his direct appeal in June 2004. Further, as we have discussed and concluded above, Graham established a new rule of substantive law which should be applied retroactively. Thus, we further conclude that Rainer's claim is not successive.
III. Merits
¶ 35 Rainer contends that the Eighth Amendment's prohibition of a sentence to life without parole for juvenile nonhomicide offenders, which was established in Graham, also applies to sentences that are the functional equivalent of a life sentence without parole imposed on juveniles who commit a nonhomicide offense. Thus, Rainer argues that his 112-year sentence is the functional equivalent of life without parole because it does not afford him any "meaningful opportunity to obtain release" within his lifetime, as required under Graham, 560 U.S. at 75, 79-80, 130 S.Ct. at 2030, 2033.
¶ 36 In support of his contention, Rainer argues that, although he will be technically first eligible for parole in 2057, after serving one-half of his 112-year sentence pursuant to section 17-22.5-403, C.R.S.2012, this possibility does not afford him a meaningful opportunity *527 for release. Specifically, the record shows that in 2057, Rainer will be 75 years of age. Based on statistics from the Centers for Disease Control, Rainer notes that he has a life expectancy of only between 63.8 years and 72 years, and, thus, he argues, he will likely die while still incarcerated. Furthermore, Rainer notes that even if he is still alive when he first becomes eligible for parole, he is unlikely to receive parole at that time, because, according to the Colorado State Board of Parole, almost ninety percent of those eligible for discretionary parole are denied parole when they first become eligible. Accordingly, he asserts that his aggregate sentence is the functional equivalent of life in prison without any realistic opportunity for release, and is, thus, categorically prohibited as cruel and unusual punishment under Graham.
¶ 37 Rejecting Rainer's argument, the trial court concluded that Graham does not apply to Rainer's sentence:
The final holding in Graham states that "[a] [s]tate need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." [ 560 U.S. at 82, 130 S.Ct. at 2034.] Defendant's sentence is in compliance with that holding.... Here, Defendant has an opportunity to be released on parole in 2057, fifty-six years before his sentence is set to expire. Defendant points out that even if he were released on parole at the first possible opportunity, he would still be seventy-five years old by the time he was released. This, however, does not diminish the fact that the Defendant does have an opportunity to be released well before the end of his term.
¶ 38 We disagree with the trial court's analysis. Rather, we conclude that Rainer's aggregate sentence does not offer him, as a juvenile nonhomicide offender, a "meaningful opportunity to obtain release" before the end of his expected life span and, thus, constitutes the functional equivalent of a life sentence without parole and is unconstitutional under Graham and its reasoning.
A. Standard of Review
¶ 39 "A trial court has broad discretion over sentencing decisions, and will not be overturned absent a clear abuse of that discretion. However, reviewing courts must pay particular attention to lower courts' applications of legal standards to the facts when defendants' constitutional rights are at stake." Lopez v. People, 113 P.3d 713, 720 (Colo.2005) (citation omitted); see also People v. Al-Yousif, 49 P.3d 1165, 1169 (Colo.2002). Therefore, review of constitutional challenges to sentencing determinations is de novo. Lopez, 113 P.3d at 720.
B. Relevant Supreme Court Eighth Amendment Jurisprudence Prior to Graham
¶ 40 The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. Graham, 560 U.S. at 58-59, 130 S.Ct. at 2021.[2] "To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society.' " Id. (quoting Estelle v. Gamble, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ).
¶ 41 "Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.' " Id. (quoting Weems v. United States, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910) ).
¶ 42 The Supreme Court's cases addressing the proportionality of sentences fall within two general classifications: the first is concerned with the particular circumstances of the case and whether the defendant's sentence for a term of years is grossly disproportionate given the particular offense. Id. at 58-61, 130 S.Ct. at 2021-22 ; see also *528 Harmelin v. Michigan, 501 U.S. 957, 1005, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) ; Close v. People, 48 P.3d 528, 536-38 (Colo.2002) (noting that Colorado has adopted Justice Kennedy's "rule of Harmelin " regarding mechanisms for proportionality reviews). The second classification of cases is concerned with categorical rules as applied to either groups of offenses or groups of offenders. Graham, 560 U.S. at 60-61, 130 S.Ct. at 2022. For example, Supreme Court categorical rulings related to categories of offenses prohibit the imposition of the death penalty for nonhomicide crimes against individuals. Id. (citing Kennedy v. Louisiana, 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) ). Categorical rulings related to categories of offenders prior to Graham prohibited the death penalty for defendants who committed their crimes before the age of eighteen, Roper, 543 U.S. at 575, 125 S.Ct. 1183, or whose intellectual functioning is in a low range, Atkins, 536 U.S. at 321, 122 S.Ct. 2242.
¶ 43 In the cases adopting categorical proportionality rules, the Court first considers "objective indicia of society's standards, as expressed in legislative enactments and state practice" to determine whether there is a national consensus against the sentencing practice at issue. Roper, 543 U.S. at 563, 125 S.Ct. 1183. In this phase of the analysis, the Court has regularly relied on social sciences data and statistics to discern "society's evolving standards of decency." Id. at 560-77, 125 S.Ct. 1183 (survey of rulings relying on sociological studies, behavioral sciences, and review of national and international practices). Next, guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," the Court determines whether the punishment in question violates the Constitution. Graham, 560 U.S. at 61, 130 S.Ct. at 2022 (quoting Kennedy, 554 U.S. at 421, 128 S.Ct. 2641 ).
¶ 44 Under this analytical framework, the Court's Eighth Amendment jurisprudence has evolved steadily toward more protection for incompetent and juvenile offenders; from its 1989 holding in Penry that the Eighth Amendment did not mandate a categorical exemption from the death penalty for the mentally disabled, to the opposite conclusion in Atkins in 2002; and from its position in Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989), that it was not a violation of the Eighth Amendment to execute a juvenile offender who was older than fifteen when he or she committed a capital crime, to the ruling in Roper that it is unconstitutional to impose the death penalty on offenders who were under the age of eighteen at the time of their offense.
¶ 45 As pertinent here, in Roper, the Court redefined its categorical prohibition against the death penalty for juveniles based in large part on social science research indicating that youth have lessened culpability and are less deserving of the most severe punishments. 543 U.S. at 569-75, 125 S.Ct. 1183. The Court stated that juvenile offenders are fundamentally different from adults for purposes of sentencing for three reasons: they have "[a] lack of maturity and an underdeveloped sense of responsibility"; they "are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure"; and their characters are "not as well formed." Id. at 569-70, 125 S.Ct. 1183 (quoting in part Johnson v. Texas, 509 U.S. 350, 367, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) ). Because of these characteristics, the Court noted, "[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." Id. at 573, 125 S.Ct. 1183.
C. Graham
¶ 46 Graham is the first Eighth Amendment case where the Court considered "a categorical challenge to a term-of-years sentence" (as opposed to the death penalty). 560 U.S. at 61, 130 S.Ct. at 2022. In Graham, the Court used the same categorical proportionality analysis employed in Atkins, Roper, and Kennedy, extending it beyond the death penalty to sentences of life without parole for juveniles who have committed nonhomicide offenses.
¶ 47 In Graham, sixteen-year-old Terrance Graham was charged with armed burglary and attempted armed robbery of a restaurant *529 in Florida. Id. at 53-54, 130 S.Ct. at 2018. Graham pleaded guilty to both charges and was convicted pursuant to a plea agreement. Id. Under the agreement, the trial court withheld adjudication of guilt as to both charges and sentenced Graham to concurrent three-year terms of probation with jail time. Id.
¶ 48 Less than six months later, when Graham was seventeen years old, Graham was arrested again after allegedly committing a home invasion and avoiding arrest. Id. at 53-56, 130 S.Ct. at 2018-19. His probation officer filed an affidavit asserting that he had violated probation by committing crimes, possessing a firearm, and associating with persons engaged in criminal activity. Id. at 55-56, 130 S.Ct. at 2019. About a year later, he appeared before the trial court, where he maintained that he had no involvement in the home invasion robbery. Id. However, Graham admitted violating his probation by fleeing arrest, even though the court underscored that the admission could expose him to a life sentence based on his previous charges. Id.
¶ 49 After a hearing, the trial court found that Graham had violated his probation by committing a home invasion robbery, possessing a firearm, associating with persons engaged in criminal activity, and fleeing. Id. At the sentencing hearing, the trial court had the statutory option to sentence Graham to between five years and life. Id. The trial court sentenced Graham to a life sentence, the maximum sentence authorized by law, explaining,
I don't know why it is that you threw your life away. I don't know why.
But you did....
[I]n a very short period of time you were back before the Court on a violation of this probation, and then here you are two years later standing before me....
... I don't understand why you would be given such a great opportunity to do something with your life and why you would throw it away.
The only thing that I can rationalize is that you decided that this is how you were going to lead your life and that there is nothing that we can do for you.... We can't do anything to deter you....
... [I]f I can't do anything to help you, if I can't do anything to get you back on the right path, then I have to start focusing on the community and trying to protect the community from your actions.
Id . at 56-57, 130 S.Ct. at 2019-20. Because Florida had abolished its parole system, a life sentence gave Graham no possibility of release unless he was granted executive clemency. Id.
¶ 50 Graham filed a motion challenging his sentence under the Eighth Amendment. Id. The First District Court of Appeal of Florida affirmed, concluding that Graham's sentence was not grossly disproportionate to his crimes and that he was incapable of rehabilitation. Id. The Florida Supreme Court denied review, and the United States Supreme Court granted certiorari. Id.
¶ 51 The Court held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." Id. at 74, 130 S.Ct. at 2030. The Court explained:
A State is not required to guarantee eventual freedom to a juvenile offender convicted of nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation . It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life.... The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does forbid States from making the judgment at the outset that those offenders never will be fit to reenter society.
Id . at 75, 130 S.Ct. at 2030 (emphasis added).
*530 ¶ 52 The Court further supported its adoption of a new categorical proportionality rule by stating, "[The rule] gives all juvenile nonhomicide offenders a chance to demonstrate maturity and reform. The juvenile should not be deprived of the opportunity to achieve maturity of judgment and self-recognition of human worth and potential. " Id. at 79, 130 S.Ct. at 2032 (emphasis added).
¶ 53 As in its previous Eighth Amendment jurisprudence, the Graham Court relied heavily on social science research and principles. First, the opinion conducted a statistical survey of life without parole sentences for juvenile nonhomicide offenders, and concluded, "The sentencing practice now under consideration is exceedingly rare. And 'it is fair to say that a national consensus has developed against it.' " Id. at 67, 130 S.Ct. at 2026 (quoting Atkins, 536 U.S. at 316, 122 S.Ct. 2242 ). The Court then relied on the social and hard sciences when considering whether the challenged sentencing practice served "legitimate penological goals." Id. It specifically adopted the analysis from Roper that juvenile offenders are fundamentally different from adults for purposes of sentencing because (1) they have "a lack of maturity and an underdeveloped sense of responsibility"; (2) they "are more vulnerable or susceptible to negative influences and outside pressures"; and (3) their characters are "not as well formed." Id. (quoting Roper, 543 U.S. at 569-70, 125 S.Ct. 1183 ). The Court in Graham noted, "No recent data provide reason to reconsider the Court's observations in Roper about the nature of juveniles":
[D]evelopments in psychology and brain science continue to show fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence. Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of "irretrievably depraved character" than are the actions of adults. Roper, 543 U.S. at 570, 125 S.Ct. 1183.... It remains true that "[f]rom a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." [Id. ]
560 U.S. at 68, 130 S.Ct. at 2026-27 (additional citation omitted). The Court extrapolated the reasoning in Roper and applied it to juvenile offenders who commit nonhomicide crimes, stating, "[W]hen compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability. The age of the offender and the nature of the crime each bear on the analysis." Id. at 69, 130 S.Ct. at 2027.
¶ 54 With respect to a life without parole sentence, the Court stated that it is "an especially harsh punishment for a juvenile," which "means denial of hope; it means that good behavior and character improvement are immaterial; it means that whatever the future might hold in store for the mind and spirit of [the convict], he will remain in prison for the rest of his days." Id. at 70, 130 S.Ct. at 2027-28 (quoting Naovarath v. State, 105 Nev. 525, 779 P.2d 944, 944 (1989) ). The Court held that such a sentence cannot be justified by the valid penological goals of retribution, deterrence, incapacitation, and rehabilitation, given the unique psychological characteristics of juvenile offenders. Id. at 70-75, 130 S.Ct. at 2028-30.
D. Subsequent Case Law Interpreting and Applying Graham
¶ 55 The parties have not cited any published Colorado appellate decisions discussing or applying Graham .[3] However, the Supreme Court and a number of other federal and state courts have issued opinions discussing the scope of Graham 's holding and reasoning.
¶ 56 Since Graham, the Supreme Court has continued on its decisional trend of providing more constitutional protections for juvenile *531 offenders. In Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 2457-58, 183 L.Ed.2d 407 (2012), the Court explicitly extended the reasoning of Roper and Graham, holding that a mandatory sentence of life imprisonment without parole for juvenile homicide offenders also violates the Eighth Amendment's prohibition on cruel and unusual punishment. See People v. Banks, 2012 COA 157, ¶¶121-23, 412 P.3d 417 (relying on Miller and holding that Colorado's statutory scheme mandating life without parole sentences for first degree murder was unconstitutional as applied to juveniles); see also J.D.B. v. North Carolina, 564 U.S. 261, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2011) (a child's age properly informs the Miranda custody analysis).
¶ 57 Other federal and state courts have also grappled with the full implications of the Court's holding in Graham . See Michelle Marquis, Note, Graham v. Florida: A Game-Changing Victory for Both Juveniles and Juvenile-Rights Advocates, 45 Loy. L.A. L.Rev. 255, 274 (2011) (noting that some scholars contend that Graham has "completely altered the landscape of the Court's Eighth Amendment jurisprudence"). Specifically, and as pertinent here, a number of cases nationwide have considered whether the holding in Graham should be extended to apply to term-of-year sentences which are materially indistinguishable from life without parole, and the rulings in those cases reveal a split of authority on that issue.[4] Because Colorado has not yet addressed this issue, a summary of these rulings in other jurisdictions helps to inform our analysis.
¶ 58 In several cases, courts have read Graham narrowly and have either explicitly or implicitly rejected the argument that Graham applies to lengthy term-of-year sentences that are the functional equivalent of life without parole. See Bunch v. Smith, 685 F.3d 546, 550 (6th Cir.2012) (upholding an Ohio state court's determination that an eighty-nine-year sentence for a juvenile nonhomicide offender did not violate the Eighth Amendment on the basis that Graham does not clearly apply to aggregate sentences that amount to the practical equivalent of life without parole); Goins v. Smith, 2012 WL 3023306, at *6 (N.D.Ohio No. 4:09-CV-1551, July 24, 2012) (unpublished opinion and order) ("even life-long sentences for juvenile non-homicide offenders do not run afoul of Graham 's holding unless the sentence is technically a life sentence without the possibility of parole"); State v. Kasic, 228 Ariz. 228, 265 P.3d 410, 415-16 (Ariz.Ct.App.2011) (concurrent and consecutive prison terms totaling 139.75 years for a nonhomicide child offender furthered Arizona's penological goals and was not unconstitutional under Graham ); Henry v. State, 82 So.3d 1084, 1089 (Fla.Dist.Ct.App.2012) (review granted Nov. 6, 2012) (based on a formalistic reading of Graham, holding that a nonhomicide child offender's ninety-year sentence is not unconstitutional); Walle v. State, 99 So.3d 967, 972-73 (Fla.Dist.Ct.App.2012) (refusing to extend Graham to aggregate sentences totaling ninety-two years on reasoning that Graham applies only to single sentences); Adams v. State, 288 Ga. 695, 707 S.E.2d 359, 365 (2011) (child's seventy-five-year sentence and lifelong probation for child molestation did not violate Graham ); People v. Taylor, 2013 IL App (3d) 110876, 368 Ill.Dec. 634, 984 N.E.2d 580, ---- (Ill.App.Ct. 2013) (Graham does not apply because the defendant was only sentenced to forty years and not life without possibility of parole); Diamond v. State, 419 S.W.3d 435, ----, 2012 WL 1431232 (Tex.Crim.App. Nos. 09-11-00478-CR & 09-11-00479-CR, Apr. 25, 2012) (upholding a sentence of ninety-nine years for a nonhomicide child offender without mentioning Graham ).
¶ 59 However, we are more persuaded by the reasoning in a number of other cases where courts have explicitly or implicitly held that Graham 's holding or its reasoning can and should be extended to apply to term-of-year sentences that result in a de facto life without parole sentence.
¶ 60 In several of those cases, courts have relied on Graham (or its reasoning) to reverse *532 a juvenile defendant's term-of-years sentence on the ground that it was the functional equivalent of life without parole, and thus unconstitutional under the Eighth Amendment. In People v. Caballero, 55 Cal.4th 262, 145 Cal.Rptr.3d 286, 282 P.3d 291 (2012), the Supreme Court of California held that term-of-years sentences that extend beyond a juvenile's life expectancy, and are imposed for nonhomicide offenses, violate the Eighth Amendment pursuant to Graham . In Caballero, the Supreme Court of California reversed an intermediate court, ruling as follows:
Consistent with the high court's holding in Graham ... we conclude that sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment. Although proper authorities may later determine that youths should remain incarcerated for their natural lives, the state may not deprive them at sentencing of a meaningful opportunity to demonstrate their rehabilitation and fitness to reenter society in the future.
145 Cal.Rptr.3d 286, 282 P.3d at 295. Consistent with Graham, the court further directed that, when sentencing nonhomicide juvenile offenders, California courts must consider the defendant's age and mental development in order to impose an appropriate time when the juvenile will be able to seek parole from the parole board. Id . Furthermore, the court ruled that the parole board must base its decisions whether to release juvenile offenders on "demonstrated maturity and rehabilitation," as required under Graham. Id. (quoting Graham, 560 U.S. at 75, 130 S.Ct. at 2030 )
¶ 61 In its reasoning, Caballero drew on People v. Mendez, 188 Cal.App.4th 47, 114 Cal.Rptr.3d 870, 886 (2010), a previous California appellate case, in which the court held that a sentence of eighty-four years to life for a nonhomicide child offender constituted cruel and unusual punishment because it was the equivalent of life without parole. The court in Mendez acknowledged that Graham was not expressly controlling because Mendez's sentence was "not technically" a life without parole sentence, but said, "We are nevertheless guided by the principles set forth in Graham ...." Id. at 883. Noting that the Court in Graham "did not define what constitutes a 'meaningful' opportunity for parole," the Mendez court concluded that "common sense dictates that a juvenile who is sentenced at the age of 18 and who is not eligible for parole until after he is expected to die does not have a meaningful, or as the Court put it, 'realistic,' opportunity of release." Id. (citing Graham, 560 U.S. at 74-75, 81-82, 130 S.Ct. at 2030, 2034 ).
¶ 62 At least three other appellate court decisions in California, prior to and after Caballero and Mendez, reached the same conclusion. In People v. Nunez, 195 Cal.App.4th 414, 125 Cal.Rptr.3d 616, 624 (2011), the court was particularly concerned with "the failure of any penological theory to rationally justify 'the severity of life without parole sentences,' " (quoting Graham, 560 U.S. at 74, 130 S.Ct. at 2030 ). It concluded:
A term of years effectively denying any possibility of parole is not less severe than a LWOP [life without parole] term. Removing the "LWOP" designation does not confer any greater penological justification. Nor does tinkering with the label somehow increase a juvenile's culpability. Finding a determinate sentence exceeding a juvenile's life expectancy constitutional because it is not labeled an LWOP sentence is Orwellian. Simply put, a distinction based on changing a label, as the trial court did, is arbitrary and baseless.
... Absent any penological rationale, the sentence the trial court imposed precluding any possibility of parole for 175 years is unconstitutional under the Eighth Amendment
....
Id. ; see also People v. J.I.A., 196 Cal.App.4th 393, 127 Cal.Rptr.3d 141, 149 (2011) (concluding that it was cruel and unusual punishment to sentence a juvenile nonhomicide offender so that he would not be eligible for parole until seventy years of age, "about the time he is expected to die," based on undisputed data *533 from the Centers for Disease Control on life expectancies for incarcerated males), vacated and remanded, --- Cal.4th ----, 148 Cal.Rptr.3d 499, 287 P.3d 70 (2012) ; People v. Argeta, 210 Cal.App.4th 1478, 149 Cal.Rptr.3d 243, 244-45 (Cal.Ct.App.2012) (reversing a sentence of 100 years to life for a juvenile offender convicted of aiding and abetting one count of murder and five counts of attempted murder because the sentence was the functional equivalent of life without parole and unconstitutional under Graham).
¶ 63 As noted above, although two Florida decisions have ruled to the contrary, we are more persuaded by the greater number of Florida cases that have applied Graham to sentences that are the functional equivalent of life without parole. In that regard, we are particularly persuaded by the reasoning in Adams v. State, 188 So.3d 849, 533, 2012 WL 3193932 (Fla. Dist. Ct.App. No. 1 D 11-3225, Aug. 8, 2012), a case that is factually similar to ours.[5]
¶ 64 In Adams, the court held that a sentence requiring a nonhomicide juvenile offender to serve at least 58.5 years in prison was a de facto sentence to life, because the defendant would not be eligible for release until he was nearly seventy-six years old, which exceeded his life expectancy according to data from the Centers for Disease Control. Id. at 851, at *2. The Adams court specifically defined a de facto life sentence as "one that exceeds the defendant's life expectancy." Id. After acknowledging the split opinions in Florida and that "the issue framed by this case is one of great public importance," the Adams court directly certified to the Florida Supreme Court the question of whether Graham applies "to lengthy term-of-years sentences that amount to de facto life sentences." Id.
¶ 65 In yet other post-Graham cases, several courts have held that some term-of-years sentences may qualify as the functional equivalent of life sentences for purposes of the Eighth Amendment and Graham, but have declined to invalidate the sentence at issue on the particular facts and circumstances in each of those cases. See Gridine v. State, 89 So.3d 909 (Fla.Dist.Ct.App.2011) (review granted Oct. 11, 2012) (a child's seventy-year sentence for attempted first degree murder was not the functional equivalent of a life sentence, but stating in dicta that some term-of-years sentences may be under Graham ); Thomas v. State, 78 So.3d 644 (Fla.Dist.Ct.App.2011) (child offender's fifty-year sentence was not the functional equivalent of a life sentence, but some term-of-years sentences may be); Angel v. Commonwealth, 281 Va. 248, 704 S.E.2d 386, 401-02 (2011) (three consecutive life sentences did not violate Graham specifically because defendant could petition for parole at age sixty, and, thus his sentence complied with Graham's requirement for a "meaningful" opportunity to obtain release based on demonstrated maturity and rehabilitation); In re Diaz, 170 Wash.App. 1039 (No. 42064-3-II, Sept. 18, 2012) (unpublished opinion) (acknowledging the argument that Graham may apply to term-of-years sentences that are the functional equivalent of life sentences but declining to decide the matter on the basis that it is the role of the legislature to do so).
E. Application of Graham to Rainer's Sentence
¶ 66 Based on our consideration of the Supreme Court's Eighth Amendment jurisprudence, and federal and state rulings since Graham, we conclude that the term of years sentence imposed on Rainer, which does not offer the possibility of parole until after his life expectancy, deprives him of any "meaningful opportunity to obtain release"
*534 and thereby violates the Eighth Amendment. See Graham, 560 U.S. at 79, 130 S.Ct. at 2033.
¶ 67 On the undisputed record before us, Rainer's sentence qualifies as an unconstitutional de facto sentence to life without parole. As noted earlier, the parties agree that Rainer will not even be eligible for parole until he is seventy-five years of age. Further, the record shows he has a life expectancy of only between 63.8 years and 72 years, based on Center for Disease Control life expectancy tables.[6] Life expectancy data was expressly cited by Rainer both in the trial court and in his briefs on appeal and is not disputed by the People. Furthermore, Rainer notes that, even if he is still alive when he first becomes eligible for parole, he is unlikely to receive it, based on data from the Colorado State Board of Parole, showing that almost ninety percent of those first eligible for discretionary parole are denied release.
¶ 68 In reaching our conclusion, initially we reject the People's argument that our constitutional proportionality analysis in this case should be governed by our supreme court's decision in Close . To the contrary, because Graham established a categorical proportionality analysis for nonhomicide juvenile offenders sentenced to life without parole, we conclude that the proportionality analysis adopted in Close, 48 P.3d at 538, and relied on by the People on appeal, is no longer valid as applied to this particular category of offenders. Specifically, the holding in Close relies on the line of cases concerned with the "grossly disproportionate" proportionality review, which considers whether under the particular circumstances of a case, the defendant's sentence for a term of years is grossly disproportionate given the particular offense. See, e.g., Graham, 560 U.S. at 58-61, 130 S.Ct. at 2021-22 ; Harmelin, 501 U.S. at 1005, 111 S.Ct. 2680 ; Close, 48 P.3d at 532-34. The Close proportionality analysis also considers each separate sentence imposed rather than consecutive sentences imposed in the aggregate. Close, 48 P.3d at 540. In contrast, Graham explicitly conducted a categorical proportionality review for juveniles convicted of nonhomicide offenses, regardless of the offense or particular circumstances of the case, as it had previously done in both Roper and Atkins . Graham, 560 U.S. at 58-63, 130 S.Ct. at 2021-23. Accordingly, we conclude that Graham effectively overruled Close with respect to this particular class of defendants. See Raile v. People, 148 P.3d 126, 130 n.6 (Colo.2006) (state court must follow precedent of United States Supreme Court on matters of federal constitutional law); People v. VanMatre, 190 P.3d 770, 774 (Colo.App.2008) (same); see also People v. Hopper, 284 P.3d 87, 93 n.3 (Colo.App.2011) (noting that Davis v. United States, 564 U.S. 229, 131 S.Ct. 2419, 180 L.Ed.2d 285 (2011), effectively overruled People v. McCarty, 229 P.3d 1041 (Colo.2010) ).
¶ 69 Further, as discussed above, we are persuaded by the reasoning of those cases that have extended Graham to de facto sentences to life without parole. See Mendez, 114 Cal.Rptr.3d at 883 (citing Graham, 560 U.S. at 74-75, 81-82, 130 S.Ct. at 2030, 2034 ) ("common sense dictates that a juvenile ... who is not eligible for parole until after he [or she] is expected to die does not have a meaningful, or as the Court put it, 'realistic,' opportunity of release."); Nunez, 125 Cal.Rptr.3d at 624 (for a juvenile offender, "[a] term of years effectively denying any possibility of parole is not less severe than a LWOP [life without parole] term").
¶ 70 We are also particularly struck by the similarities between Rainer's sentence and the one at issue in Adams . In Adams, as *535 here, the juvenile nonhomicide defendant faced a sentence under which he could not be considered for release until he was nearly seventy-six years old, which exceeded his life expectancy according to Centers for Disease Control data. The court in Adams ruled that this sentence was the functional equivalent of a life sentence without parole, and therefore, prohibited under Graham . We are persuaded by the Florida court's reasoning in Adams, and reach the same conclusion here with respect to Rainer's sentence.
¶ 71 In our decision to align ourselves with those courts that have extended Graham 's holding to sentences that are the functional equivalent of life without parole, we also find instructive the language in Graham that readily lends itself to this approach. In Graham, the Court did not employ a rigid or formalistic set of rules designed to narrow the application of its holding. Instead, it utilized broad language, condemning the sentence of life without parole in that case for qualitative reasons, such as because it "gives no chance for fulfillment outside prison walls, no chance for reconciliation with society, no hope"; because "[a] young person who knows that he or she has no chance to leave prison before life's end has little incentive to become a responsible individual"; and because the prison system itself sometimes reinforces the lack of development of inmates, leading to "the perverse consequence in which the lack of maturity that led to an offender's crime is reinforced by the prison term." Graham, 560 U.S. at 79, 130 S.Ct. at 2032-33.
¶ 72 Likewise, Graham employed expansive language to define its sentencing requirements for juvenile nonhomicide offenders, stating that sentences must offer "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation," id. at 75, 130 S.Ct. at 2030; and "give [ ] all juvenile nonhomicide offenders a chance to demonstrate maturity and reform" and "the opportunity to achieve maturity of judgment and self-recognition of human worth and potential." Id. at 79, 130 S.Ct. at 2032. Indeed, even the closing words of the Graham opinion do not focus on a specific formalistic definition of what constitutes an allowable term-of-years sentence for a nonhomicide juvenile offender, but provide only that while a state "need not guarantee the [nonhomicide juvenile] offender eventual release ... it must provide him or her with some realistic opportunity to obtain release ." Id. at 82, 130 S.Ct. at 2034 (emphasis added).
¶ 73 Given what we view as the broad nature of Graham 's directives, we conclude that the Court's holding and reasoning should apply to a sentence that denies a juvenile offender any meaningful opportunity for release within his or her life expectancy, or that fails to recognize that "[j]uveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved character' than are the actions of adults." Id. at 68, 130 S.Ct. at 2026 (quoting Roper, 543 U.S. at 570, 125 S.Ct. 1183 ). Accordingly, Rainer's 112-year sentence, with the virtually nonexistent possibility of parole at the age of seventy-five, violates the holding and reasoning of Graham because it virtually "guarantees he will die in prison without any meaningful opportunity to obtain release, ... even if he spends the next half century attempting to atone for his crimes and learn from his mistakes." Id . at 79, 130 S.Ct. at 2033; see also Mendez, 114 Cal.Rptr.3d at 883.
¶ 74 We also find it instructive that, while Colorado appellate courts have not addressed whether Graham should apply to nonhomicide juvenile offender sentences that are the functional equivalent of life without parole, the Colorado General Assembly, both before and after Graham, has adopted legislation aligned with the principles articulated in Roper, Graham, and Miller.
¶ 75 In 1993, well prior to Graham, Colorado established the Youthful Offender System as an alternative sentencing option for certain juveniles. Ch. 2, sec. 5, § 16-11-311, 1993 Colo. Sess. Laws 1st Extra. Sess. 13. The statute, as amended, stated the legislative intent that offenders sentenced to the youthful offender system should "be housed and serve their sentences in a facility specifically designed and programmed for the youthful offender system" and that "offenders so sentenced be housed separate from and not brought into daily physical contact *536 with inmates sentenced to the department of corrections." Ch. 227, sec. 1, § 16-11-311(1)(c), 2000 Colo. Sess. Laws; see § 18-1.3-407(1)(a), C.R.S.2012. Establishment of this youth-specific penal system demonstrates that, even before Graham, public policy in Colorado was trending toward the view that sentencing and treatment of juveniles in the criminal context should, with few exceptions, be qualitatively different from the treatment of adult offenders. See also Flakes v. People, 153 P.3d 427, 436 (Colo.2007) ("A decision to impose an adult sentence on a juvenile without judicial findings risks an arbitrary deprivation of a juvenile's liberty interest in avoiding a harsh punishment."); A.C. v. People, 16 P.3d 240, 242 (Colo.2001) (noting that an adult sentence is the harsh punishment that the Colorado Children's Code was designed to avoid).
¶ 76 Also, at the time Graham was decided, there apparently were no juvenile nonhomicide offenders serving life without parole sentences in Colorado. Graham, 560 U.S. at 63-65, 130 S.Ct. at 2024. See United States v. C.R., 792 F.Supp.2d 343, 494 (E.D.N.Y.2011) (an important inquiry in determining excessiveness of a term of imprisonment is the "actual sentencing practices" in a jurisdiction) (citing Graham, 560 U.S. at 67-68, 130 S.Ct. at 2026 ; Thompson v. Oklahoma, 487 U.S. 815, 831-32, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988) ; Roper, 543 U.S. at 564-65, 125 S.Ct. 1183 ; Kennedy, 554 U.S. at 433-35, 128 S.Ct. 2641 ); see also § 18-1.3-401(4)(b)(I), C.R.S.2012 (as of July 1, 2006, requiring that all juveniles convicted as adults of a class 1 felony be sentenced to a term of life imprisonment with the possibility of parole after serving a period of forty years).
¶ 77 In 2012, the General Assembly enacted House Bill 12-1271, which, as relevant here, exempts most juvenile offenders from certain mandatory minimum crime of violence sentencing provisions under section 18-1.3-406, C.R.S.2012 (including those imposed on Rainer). See § 19-2-517(6)(a)(I), C.R.S.2012. The legislative history of House Bill 12-1271 reveals that the provisions in this bill were, in large part, motivated by the social science studies on the development of juveniles that were at the heart of the reasoning articulated by the Supreme Court in Roper, Graham, and Miller. See Hearings on H.B. 1271 before the S. Judiciary Comm., 68th Gen. Assemb., 1st Sess. (Mar. 8, 2012) (comments of Senator Giron, co-sponsor) ("[O]ur brains continue to develop well into our mid-twenties.... Children are less culpable than adults and they are also much more likely to respond to rehabilitation. Even the United States Supreme Court has recognized these findings in recent decisions."); see also Colorado General Assembly, Summaries by Bill for HB 12-1271, http://www.leg.state.co.us/CLICS/CLICS2012A/csl.nsf/Committee?OpenFrameSet (follow "Summaries by Bill"; then follow "HB 12-1271"; then follow "3/08/2012, House Judiciary, Bill Summary" or "3/26/2012, Senate Judiciary, Bill Summary") (last visited Mar. 6, 2013).
¶ 78 While we acknowledge, as did the Court in Graham, that juvenile defendants such as Rainer "may turn out to be irredeemable, and thus deserving of incarceration for the duration of their lives," the holding and reasoning in Graham forbid states "from making the judgment at the outset that those offenders never will be fit to reenter society." 560 U.S. at 75, 130 S.Ct. at 2030. The trial court here appears to have made this very judgment when it imposed Rainer's sentence, and the record shows that, at sentencing, the trial court acknowledged and indeed intended that Rainer would spend the rest of his life in prison. Nor, contrary to the People's argument, did the trial court take into account Rainer's age or the developmental differences between juveniles and adults in imposing Rainer's sentence. Thus, Rainer's sentence, which from the outset failed to offer him any meaningful chance at parole during his lifetime, "improperly denies [him] a chance to demonstrate growth and maturity," as required under Graham . Id. at 73, 130 S.Ct. at 2029.
¶ 79 Accordingly, we conclude that Rainer's sentence is the functional equivalent of life without parole and is unconstitutional pursuant to the Eighth Amendment and Graham. Id. at 79, 130 S.Ct. at 2033.
*537 F. New Arguments
¶ 80 We decline to consider new arguments made by the People during oral argument that were not made either in the trial court or in the People's answer brief on appeal. See People v. $11,200 U.S. Currency, 316 P.3d 1, 3, 2011 WL 3612233 (Colo.App. No. 10CA1805, Aug. 18, 2011); People v. Scearce, 87 P.3d 228, 231 (Colo.App.2003).
G. Remedy
¶ 81 Having determined that Rainer's sentence is unconstitutional under the Eighth Amendment, we remand to the trial court for resentencing consistent with this opinion and the principles announced in both Graham and Miller . We also direct that Rainer should be appointed counsel to represent him at the resentencing proceeding.
¶ 82 In sentencing Rainer, the trial court must ensure that his sentence is constitutionally proportional in light of the categorical proportionality analysis for youth offenders articulated in Roper, Graham, and Miller .
¶ 83 The order is reversed, the sentence is vacated, and the case is remanded for further proceedings.
JUDGE GABRIEL and JUDGE DUNN concur.

As noted, the prosecution did not respond to Rainer's motion in the trial court, nor did the People address the retroactivity issue in their answer brief on appeal. At oral argument, the People conceded that Graham applies retroactively to Rainer's sentence. Because the trial court ruled against Rainer on retroactivity, we address this issue notwithstanding the People's concession.

See also Colo. Const. art. II, § 20. The parties have argued this case exclusively under the Eighth Amendment to the United States Constitution, and, thus, we limit our analysis accordingly.

In People v. Lucero, 2013 COA 53, ¶¶ ----, 410 P.3d 467 (Colo.App.2013), also announced today, another division of this court declined to address and resolve the constitutional issues we consider here, concluding, on the record in that case, that the defendant's sentence was not a de facto sentence to life without parole because he will be eligible for parole consideration at age fifty-seven, well within his natural lifetime.

The division in Lucero acknowledged this split of authority, but declined to address the constitutional issue whether Graham "applies only to actual life without parole sentences, not de facto life without parole sentences." Lucero, ¶ ___.

Other relevant Florida rulings include United States v. Mathurin, 2011 WL 2580775, at *3 (S.D. Fla. No. 09-21075-CR, June 29, 2011) (unpublished order) (holding a combined sentence of 307 years for a child offender convicted of armed robbery and carjacking "constitutionally offensive" under Graham ); Floyd v. State, 87 So.3d 45 (Fla.Dist.Ct.App.2012) (per curiam) (holding that a child sentenced to a combined eighty-year sentence for two counts of armed robbery constituted cruel and unusual punishment as the functional equivalent of a life sentence without parole); and Smith v. State, 93 So.3d 371 (Fla.Dist.Ct.App.2012) (declining to rule out that Graham can apply to some term of years sentences, but holding an aggregate eighty-year sentence constitutional because Florida's gain time statutes offer "meaningful opportunity to obtain release" as required under Graham ).

Numerous cases, including J.I.A., Mendez, Adams, and the magistrate judge recommendation in Thomas v. Pennsylvania, 2012 WL 6697971, at *11 (E.D. Penn. No. CV-10-4537, June 5, 2012) (unpublished magistrate's report and recommendation), have utilized Centers for Disease Control life expectancy tables to determine whether a sentence qualifies as the functional equivalent of life without parole. We also note the Supreme Court's extensive reliance on scientific data and statistics in Roper, Graham, and Miller. See Roper, 543 U.S. at 560-77, 125 S.Ct. 1183 (survey of rulings relying on sociological studies, behavioral sciences, and review of national and international practices); Graham, 560 U.S. at 67-68, 77-79, 130 S.Ct. at 2026, 2032 ; Miller, 567 U.S. 460, 132 S.Ct. at 2458 ; cf. Walle, 99 So.3d at 971 (court declined to expand the scope of Graham to a sentence that is the functional equivalent of life without parole in part because the record on review was devoid of social science data considered in Graham ).