Kenneth Lee DERRING *v.* STATE of Arkansas

CR 80-241                                          619 S.W. 2d 644

Supreme Court of Arkansas
Opinion delivered July 13, 1981

348

*E. Alvin Schay*, State Appellate Defender, by: *Linda Faulkner Boone*, Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Leslie M. Powell*, Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant was convicted by a jury of capital murder, Ark. Stat. Ann. § 41-1501 (Repl. 1977), and sentenced to life without parole. Hence this appeal.

Appellant first asserts that the court erred in denying his motion to dismiss the information pursuant to the Interstate Agreement on Detainers Act. Ark. Stat. Ann. § 43-3201 (Repl. 1977). Appellant was charged in August, 1978, with the alleged offense while he was incarcerated in a federal facility in Missouri. On January 10, 1979, he requested disposition of the Arkansas charges under the Interstate Agreement. He was returned to Arkansas on May 10. A public defender was appointed a few days later, who moved for a continuance until the November, 1979, term of court. The written motion, signed by appellant and his attorney, was granted on June 7. Appellant was returned to federal custody on July 11 or two months later. Subsequently, while appellant was still in federal custody, a second motion for a continuance was sought until the April, 1980, term of court. This motion, signed also by appellant and his attorney, was granted. Appellant was returned to Arkansas on February 28, 1980. On March 3 he filed a motion to dismiss relying on the provisions in the Interstate Agreement on Detainers Act. Art. III (d) provides that a prisoner's request for a final disposition of an indictment, information or complaint pending another state operates "as a request for final disposition of all untried indictments, informations or complaints on the basis of which detainers have been lodged" in the state. This article then provides:

> If trial is not had on any indictment, information or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Appellant thus contends this provision is mandatory and requires dismissal since he should not have been returned to federal jurisdiction until the charge against him was disposed of.

We first observe that, upon being returned to Arkansas, appellant requested and was granted a five month continuance. He made no objection, after two months local incarceration, when he was retransferred to the federal facility. There he requested and was granted another extension, i.e., six months. He never objected in any manner to his retransfer. It appears he acquiesced in the procedure about which he now complains. Furthermore, this issue has been decided in the federal courts in regard to Art. IV of this act, which applies when the state and not the prisoner requests he be made available for trial. It includes the same language which requires a trial or disposition of charges before the prisoner is returned. In *Camp* v. *United States*, 587 F. 2d 397 (8th Cir. 1978), the court held a violation of Art. IV (e) is a nonjurisdictional error and, therefore, waivable by a defendant in that case by a guilty plea. The court rejected the idea that a "knowing and intelligent waiver" is required as to rights which are not guaranteed constitutionally, noting the Interstate Agreement on Detainers Act is a set of procedural rules only. Here, appellant, also, argues that he was prejudiced by the lack of opportunity to consult with his attorney. We cannot agree. He was in a local jail facility for a period of approximately two months, represented by counsel, before being returned without objection to the federal facility. As an inmate there, he sought and was granted a second continuance through his attorney. He was returned to the local jurisdiction one and a half months before trial. He sought no further continuance. In the circumstances we find no prejudicial error. See *United States* v. *Hach*, 615 F. 2d 1203 (8th Cir. 1980).

The second point on appeal is that the trial court erred in admitting character evidence of the victim contrary to the Uniform Rules of Evidence, Rule 404 (a) (2). That rule provides that character evidence is not admissible to prove the victim acted in conformity therewith on a particular occasion, with certain enumerated exceptions, none of which are applicable here. Rule 406 makes habit testimony admissible to prove the conduct of the person on a particular occasion was in conformity with the habit.

Because the victim's body was never found, the state

introduced considerable evidence of his habits to establish the fact he did not disappear on his own volition. He had not been heard from since June of 1977, nearly three years at the time of trial. The evidence adduced from various witnesses was all to the effect that the victim was very dependable in his routine, kept a fairly rigid schedule, always had breakfast with the same person each day, attended school regularly, had no bad habits, and returned home to his apartment at the same time each evening. His father testified that his son regularly contacted him and his mother, and they had not heard from him after June 16, 1977. There was testimony, also, as to the victim's good samaritan tendency to stop and aid people in need, including hitchhikers, which was offered to show he stopped to help the appellant, who was seen afoot on the highway near where the victim was last seen stopped in his car and talking to a black man. Appellant is black. Further evidence along this line was introduced of the victim's religious habits, such as "witnessing" wherever he was and regularly attending his church.

The state urges that evidence of a person's good habits naturally leads to an assumption of good character, but that does not preclude its introduction. As stated in McCormick on Evidence § 195 (2nd Ed. 1972):

> Character and habits are close akin. Character is a generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness. 'Habit,' in modern usage, both lay and psychological, is more specific. It describes one's regular response to a repeated specific situation . . . A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct . . .
> Character may be thought of as the sum of one's habits though doubtless it is more than this.

Although there may have been some overlapping of character and habit, here the trial judge, upon objection, admonished several times that he was admitting this evidence on the issue of habit, and not as character evidence. Furthermore, no limiting instruction was requested. See

*Wood* v. *Burris*, 241 Ark. 118, 406 S.W. 2d 381 (1966); *City of Springdale* v. *Weathers*, 241 Ark. 772, 410 S.W. 2d 754 (1967); and *Miller* v. *Goodwin and Beavers*, 246 Ark. 552, 439 S.W. 2d 308 (1969). Preliminary questions about the admissibility of evidence are decided by the trial court. Rule 104 (a), Uniform Rules of Evidence, *Reeves* v. *State*, 263 Ark. 227, 564 S.W. 2d 503 (1978). Our responsibility on review is to determine if there has been an abuse of discretion on the part of the trial court. *White* v. *Mitchell*, 263 Ark. 787, 568 S.W. 2d 216 (1978). Appellant has not shown an abuse of that discretion.

Appellant next contends that there was insufficient evidence to support the finding of capital murder. The argument is that the *corpus delicti* was not proved. We disagree. The *corpus delicti* may be proved by circumstantial evidence, i.e., there was in fact a death and that the deceased came to his death by the criminal agency of another. *Edmonds* v. *The State*, 34 Ark. 720 (1879); *Hall* v. *State*, 209 Ark. 180, 189 S.W. 2d 917 (1945); *Hays* v. *State*, 230 Ark. 731, 324 S.W. 2d 520 (1959); *Sims* v. *State*, 258 Ark. 940, 530 S.W. 2d 182 (1975); and 1 Underhill's Criminal Evidence § 37 (5th Ed. 1956). As noted previously, the victim was a person of strict routine. On the last day he was seen, June 16, 1977, he had breakfast as usual with his friend and left about 7:30 a.m. for classes at a vo-tech school, driving his blue and white Dodge Dart. At about the same time the appellant was present at a nearby service station. Appellant left there afoot going toward Interstate 55, the highway the victim took to get to school. An instructor at the school testified he looked south from school and saw the victim on the viaduct standing beside his car talking with a black man about 7:50 a.m. The victim did not attend classes that day nor had the instructor seen him since. The victim would have completed his training in three months. A fellow student, on his way to school, saw the victim as the student crossed the interstate. A black man was in the passenger seat.

Sometime around the middle of June, 1977, the appellant attempted to sell a blue and white Dodge Dart in Sikeston, Missouri. The junk dealer testified that appellant was careful not to touch the car with his hand, pulling his

sleeve down to cover his hand when he touched the car, even to open the door, and stated he wanted to "destroy the car." This dealer reported the incident to the police. When appellant was arrested in Sikeston, a .32 caliber revolver was taken from his person as well as an Arkansas safety inspection sticker from the victim's car. A search of the vehicle resulted in finding papers with the victim's name on them and a Bible with his name on the inside. School test papers, pictures, bank account records and his car license plate were found in the trash can behind the residence where the appellant was staying. Appellant told an acquaintance in Sikeston that he had shot and killed a man in Arkansas, had thrown him in the river, and was driving the "guy's car he had killed." Later, appellant told a fellow inmate at the Mississippi County jail that he had shot a man with a .32 caliber revolver at the school in June of 1977 and had thrown his body off a bridge into a ditch about four miles from the school.

Here, independent of the confessions, there was substantial circumstantial evidence of the *corpus delicti*, i.e., that there was in fact a death and that the deceased came to his death by the act of one other than himself. Its weight and sufficiency was for the jury. This evidence, coupled with the appellant's confession, amply supports the court's refusal to direct a verdict of acquittal.

Appellant next contends that it was error to allow into evidence the appellant's out-of-court confessions before the crime itself had been sufficiently proved, relying on *Charles v. State*, 198 Ark. 1154, 133 S.W. 2d 26 (1939), and Ark. Stat. Ann. § 43-2115 (Repl. 1977). That statute provides an out-of-court confession alone will not warrant a conviction, but must be corroborated by other proof that such an offense was committed. In *Charles v. State, supra*, we held that the test is not whether there is sufficient evidence to support a conviction under § 4018 of Pope's Digest, the forerunner of § 43-2115, *supra*, requiring corroboration of a confession. The test is rather whether there was evidence that such an offense was committed. Here, at the time the confessions were introduced, all the corroborating evidence, as previously discussed, had been introduced with the exception of the

deceased's having been seen with a black man in his car and the testimony as to the items belonging to the victim found in the car and at the Sikeston residence and as to the .32 caliber revolver and other items taken from appellant at the time of arrest. There was sufficient evidence previously introduced to meet the test as set out in *Charles* v. *State, supra*.

Neither can we agree with appellant's contention that the court erred in refusing his requested instruction on *corpus delicti* inasmuch as it appears that the court adequately instructed the jury on this subject.

Finally, we have examined the record, in accordance with Ark. Stat. Ann. § 43-2725 (Repl. 1977) and Rule 11 (f) of the Rules of the Supreme Court and Court of Appeals and find no reversible error.

Affirmed.