Douglas Richard MORGAN *v.* STATE of Arkansas

CR 84-211 · 691 S.W.2d 164

Supreme Court of Arkansas
Opinion delivered June 17, 1985

*David M. Clark*, for appellant.

· *Steve Clark*, Att'y Gen., by: *Velda P. West*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. A.D. and Hattie Chrisco were asleep in the bedroom of their home in a remote section of Izard County when they were awakened by an intruder between 11:20 and 11:30 on the night of February 7, 1984. After a confrontation, the intruder escaped into some woods beside their house. A.D. had not observed the intruder but Hattie had. She saw that he was a young man, average height, average build, wearing a dark jacket and a baseball cap. A.D. subsequently found that his wallet containing eight to ten dollars had been stolen. In addition, he found a knife blade from one of their kitchen knives in the covers of their bed. The knife handle was found in the hallway. The Chriscos called the Sheriff's office to report the crimes and give a description of the culprit. Hattie later discovered that she had been stabbed in the side.

Sheriff Yancey knew that the appellant had been living in Izard County for about a year, and that he was on probation for burglary in Chicago. He knew that appellant did not own a car, and the physical description fit appellant. He also knew that one week earlier a prowler had been reported in another nearby rural area between midnight and 1:00 a.m., and, soon after the report, the Sheriff found appellant hitchhiking nearby. The Sheriff knew that, at that time, the appellant had on a dark jacket and a baseball hat. The Sheriff also knew that Tim Porter, a minister, had befriended appellant in the past. Rev. Porter's home was two miles from the scene of the crime. Based upon this information, the Sheriff instructed the deputy sheriffs to be on the lookout for appellant and to bring him in for questioning.

Deputy Whiteaker was sent to the remote area near Rev. Porter's home. He could hear dogs barking in one area, and then he heard barking near Porter's home. He drove to within 200 yards of Porter's house and stopped his car. He saw someone in the carport and could hear loud voices. It was 2:45 in the morning. The person in the carport had on a dark jacket and a baseball cap. The deputy got out of his car and asked the person in the carport to identify himself. Appellant identified himself. About that time Reverend Porter, from inside his home, told the deputy, "Doug has stated that he had done something bad and needs to talk to somebody." The deputy arrested appellant and read him his *Miranda* rights. Appellant immediately responded: "I'm in a lot of trouble, ain't I? I don't know why I did it. I didn't mean to hurt anybody." The deputy did not attempt to interrogate appellant

but, rather, drove him to the Sheriff's office for the Sheriff to interrogate him. There, he gave a confession which, in part, is as follows:

> I started walking up the road and I saw a house close to the road. I went up to the house thinking I could warm up. I looked inside the cars out front, but I didn't want to take one because I was afraid I would get picked up. I decided to go up to the house and see if anyone was home. I didn't know who lived there. I knocked on the door but no one answered. I tried the door and it was open. I poked my head in and said hello. Nobody said anything and I went on in. I saw a fire burning to my right, and a flashlight to my left. I picked up the flashlight and started looking to see if anyone was in the house. I cupped my hand over the light so it wouldn't be very bright. I started down a hallway and opened a door. There was someone asleep in the room. I thought it was a kid. I eased the door back shut and went on down the hall to the next door. It was open. There was two people asleep in the bed. I saw a pair of pants on the floor by the bed. When I saw the pants I decided to see if they had any money in them. I went through the pockets and found a wallet. I left the room and started to leave the house. I got out to the porch and waited for a few minutes. When no one woke up I decided to go back in. I turned the bathroom light out but I'm not sure if it was the first time or the second time. I went back to the bedroom and stood for a few minutes. I decided I'd better get something in case they woke up. I went into the kitchen and found a knife in one of the drawers. I wasn't intending to use it for anything except to scare them. I went back to the bedroom. I opened up the closet door and looked around but I didn't get anything out of there. I went over to the dresser and started to go through it but I heard a noise from the bed. I whirled around and hit the lady with the knife. The knife broke and I ran out of the room. Both people were shouting but I didn't hear what they were saying because I was too busy trying to get out of the house. I ran down the stairs and out toward the highway. I fell in the ditch and someone started shooting. I think there were five or six shots. I ran down the road until I saw car lights coming and I ducked into the woods. I followed a dirt road for a little ways until I came to

a chicken barn. There was an old pickup truck sitting behind the barn. I got in the truck and started it up, I drove the truck for maybe a quarter of a mile and left it. I counted the money while I was at the truck. There was ten dollars ($10.00) in the wallet, a five and five ones. I started walking again until I came to a field where there were some horses. I dropped the wallet there beside the horses. I finally came out to the highway in Sage. I ran over behind Tim Porter's house and hid in the bushes. I slept for a little while, and then went back down to Tim Porter's house. I threw the money up on top of Tim's house because I didn't want to get caught with it. While I was talking to Tim the deputy drove up.

The morning after the confession was given the officers found A.D.'s wallet on the Wayne Garner farm and also found the pickup truck which appellant had stolen from Wayne Garner. Later they found ten dollars in bills behind the Porter house.

Appellant argues that the trial court erred in not suppressing his confession because the officers did not have probable cause to arrest him. *See Wong Sun* v. *United States*, 371 U.S. 471 (1966). The argument is without merit because the officers did collectively have probable cause. Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been committed by the person arrested. *Coble* v. *State*, 274 Ark. 134, 624 S.W.2d 421 (1981). Here, the officers knew appellant had been a burglar in the past; they knew a week earlier he had been in a remote area where a prowler had been reported and, at that time, he had on a dark jacket and a baseball hat; they knew that at 11:20 to 11:30 p.m. the intruder in this case, again afoot in a remote area, had on a dark jacket and a baseball hat; they knew that at 2:45 a.m. appellant was spotted outside a minister's home wearing a dark jacket and a baseball hat; they knew the appellant was within walking distance of the crime scene; and they knew the minister said, "Doug has stated that he done something bad . . ." Clearly, probable cause existed.

Appellant next argues that the trial court erred in not granting appellant's motion for a directed verdict because of the

state's failure to offer proof independent of the defendant's confession to each and every element of the crimes charged. The trial court was correct. Ark. Stat. Ann. § 43-2115 (Repl. 1977) provides:

> A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed.

The statute does not require the corroborating evidence to be independently sufficient to support a conviction. Instead it requires only corroborating evidence that such an offense was committed. *Derring* v. *State*, 273 Ark. 347, 619 S.W.2d 644 (1981). In this case, prior to admission of the confession, the proof showed the knife blade, the wound, the missing wallet, and the eyewitnesses. After the confession was admitted, it was further corroborated by proof of the recovery of the stolen truck, the recovery of the stolen wallet, and the recovery of bills equaling the amount of the stolen money. The corroboration was sufficient.

Affirmed.