2015 Ark. 146

**Steven Wayne BRAMLETT, Appellant,**

v.

**Ray HOBBS, Director, Arkansas Department of Correction, Appellee.**

No. CV–12–330

Supreme Court of Arkansas.

Opinion Delivered April 9, 2015

Steven Wayne Bramlett, pro se, for Appellant.

Dustin McDaniel, Att'y Gen., by: Karen Virginia Wallace, Ass't Att'y Gen., for Appellee.

KAREN R. BAKER, Associate Justice

On October 30, 1979, Appellant, Steven Wayne Bramlett, entered a negotiated plea of guilty to attempted capital murder and was sentenced to life in the Arkansas Department of Correction. The record demonstrates that Bramlett was seventeen years old when he committed this offense.

On October 26, 2011, pursuant to Ark.Code Ann. § 16–111–101 (Repl.2010), Bramlett filed a pro se complaint for declaratory relief alleging that the parole-eligibility statute, codified at the time of the offense at Ark. Stat. Ann. § 43–2829 [1],

---

1. Ark. Stat. Ann. § 43–2829 is now codified at Ark.Code Ann. § 16–93–604 (Repl. 2006). For felonies committed between April 1, 1977 and April 1, 1983, subsection (b)(1) provides:

(b) A person who committed felonies on and after April 1, 1977 and prior to April 1, 1983, and who has been convicted and incarcerated therefor, is eligible for release on parole as follows:

was unconstitutional as applied to Bramlett. Relying on *Graham v. Florida,* 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010), Bramlett requested the circuit court find that his life sentence for criminal attempt to commit capital murder violates the Eighth Amendment and is unconstitutional as applied to him and remand his case to the circuit court for resentencing to a term of years. On December 7, 2011, Appellee, Ray Hobbs, as Director of the Arkansas Department of Correction (the State), responded with its motion to dismiss for failure to state facts for which relief can be granted, and also responded that the State was entitled to summary judgment pursuant to Ark. R. Civ. P. 56. On December 20, 2011, Bramlett responded to the State's motion to dismiss and on January 6, 2012, the State replied. On January 17, 2012, Bramlett responded to the State's reply and on January 20, 2012, the State filed a reply.

On March 16, 2012, the circuit court denied Bramlett's complaint for declaratory relief and granted the State's motion for summary judgment and dismissed Bramlett's action. On March 26, 2012, Bramlett filed his notice of appeal. On May 16, 2012, Bramlett filed his brief, the State timely responded, and Bramlett timely replied. On January 29, 2015, we issued a per curiam opinion and ordered Bramlett to supplement his addendum. *Bramlett v. Hobbs,* 2015 Ark. 32, 2015 WL 393862 (per curiam). We were unable to reach the merits of Bramlett's appeal because pleadings relied upon by the circuit court and the parties were omitted from Bramlett's

addendum. On February 11, 2015, Bramlett supplemented his addendum and the matter is now properly before the court.

On appeal, Bramlett presents one issue: the circuit court erred by granting the State's motion for summary judgment holding that his life sentence for attempted capital murder does not violate the Eighth Amendment to the United States Constitution and *Graham* does not entitle Bramlett to relief.

The issue presented in this appeal stems from the circuit court's order granting the State's motion for summary judgment. The circuit court's March 16, 2012 order states in pertinent part:

In *Graham* the United States Supreme Court ruled that the Eighth Amendment to the United States Constitution prohibits a juvenile offender from being sentenced to life without a possibility of parole for a nonhomicide offenc[sic][s]e. *Graham* at 2017–18.

Mr. Bramlett asks the Court to classify attempted capital murder as a nonhomicide offense. The parties did not cite nor has the Court found either a United States Supreme Court case or Arkansas case that has provided a list of crimes that fit into the category of a nonhomicide offense. A review of other States' cases reveals division.

Justice Kennedy explains that there are two types of Constitutional analyses. The first type is when a Court considers all of the circumstances of the case in determining whether a sentence for a term of years is grossly disproportionate

(1) An inmate under sentence of death or life imprisonment without parole is not eligible for release on parole but may be pardoned or have his or her sentence commuted by the Governor, as provided by law. An inmate sentenced to life imprisonment is not eligible for release on parole unless the sentence is commuted to a term of years by

executive clemency. Upon commutation, the inmate is eligible for release on parole as provided in this section[.]

Parole eligibility is determined by the law in effect at the time the crime is committed. *Boles v. Huckabee,* 340 Ark. 410, 12 S.W.3d 201 (2000).

for a particular defendant's crime rendering it unconstitutionally excessive. The other is a categorical approach which was the one applied in the *Graham* case. In *Graham* the Court looked at a particular type of sentence (life without parole) as it applied to an entire class of offenders who had committed a range of crimes. *Graham* at 2022–23.

Referencing *Kennedy v. Louisiana,* 554 U.S. 407, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008); *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); and *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1982); Justice Kennedy wrote, "The Court has recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." Thus the Court has indicated, by implication, that one who kills, intends to kill or foresees that life will be taken may deserve the most serious punishment. This Court notes that in the analysis in *Graham,* culpability and punishment should correlate. There is a slim line of distinction between defendants who intend to kill and succeed and those who intend to kill but do not succeed.

Should a person who intends to kill, acts upon that intention but is a poor shot be held less culpable than one who intends to kill, acts upon that intention but is a good shot? Although Bramlett's victim survived, he admitted that he intended to kill her when he shot her multiple times. But for his poor aim, she would be dead.

Following the reasoning in the *Graham* case, the crime of criminal attempt to commit capital murder falls within the category of a homicide offense, because it is an attempt to kill with one possible or probable foreseeable result the taking of a life.

The motion for Summary Judgment is GRANTED and the case is DISMISSED.

In *Lipsey v. Giles,* 2014 Ark. 309, at 5–6, 439 S.W.3d 13, 17, we explained that "summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Moreover, ... even when there is no material dispute as to the facts, the court will determine whether 'reasonable minds' could draw 'reasonable' inconsistent hypotheses to render summary judgment inappropriate. In other words, when the facts are not at issue but possible inferences therefrom are, the court will consider whether those inferences can be reasonably drawn from the undisputed facts and whether reasonable minds might differ on those hypotheses. *Id.* If so, summary judgment is not appropriate." *Id.* (internal citations omitted). Bramlett asserts that the circuit court erred, homicide under Graham does not include attempted capital murder, and he is entitled to relief under *Graham.* Bramlett contends that pursuant to Ark. Code Ann. § 16–93–604, Bramlett has been denied "meaningful opportunity to obtain release mandated by the United States Supreme Court's ruling in *Graham.*" Bramlett further contends that the circuit court has misapplied dicta in *Graham* to reach the result that attempted capital murder is a homicide offense. Finally, Bramlett asserts that a homicide, by law and definition, must include a death.

The State responds that summary judgment was appropriate because there was no issue of material facts at issue and the circuit court properly granted summary judgement on the legal issue—whether attempted capital murder was a homicide offense within the meaning of *Graham.*

The State contends that the *Graham* court did not hold that the Eighth Amendment prohibits the imposition of a sentence of life imprisonment without parole to a juvenile offender for the crime of attempted capital murder. Stated differently, the State contends that *Graham* did not hold that crimes of attempted homicide are not homicide offenses. The State urges us to affirm the circuit court and asserts that Bramlett's interpretation of *Graham* would require this court to expand *Graham*'s holding, which this court is prohibiting from doing. Relying on the following language from the *Graham* opinion, the State further contends that, because the record demonstrates that Bramlett intended to kill his victim when he shot at her multiple times, his crime is "indeed a homicide under *Graham*":

> The Court has recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers.

*Graham,* 560 U.S. at 69, 130 S.Ct. 2011 (internal citations omitted).

In 2010, the Supreme Court of the United States held that the Eighth Amendment "forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender." *Graham,* 560 U.S. at 75, 130 S.Ct. 2011. In *Graham,* the Court explained:

> There is a line "between homicide and other serious violent offenses against the individual." *Kennedy,* 554 U.S. at [438], 128 S.Ct. at 2659–60. Serious nonhomicide crimes "may be devastating in their harm . . . but 'in terms of moral depravity and of the injury to the person and to the public,' . . . they cannot be compared to murder in their 'severity and irrevocability.'" *Id.,* at [438], 128 S.Ct. at 2660 (quoting *Coker,* 433 U.S. at 598, 97

S.Ct. 2861 (plurality opinion)). This is because "[l]ife is over for the victim of the murderer," but for the victim of even a very serious nonhomicide crime, "life . . . is not over and normally is not beyond repair." *Ibid.* (plurality opinion). Although an offense like robbery or rape is "a serious crime deserving serious punishment," *Enmund, supra,* at 797, 102 S.Ct. 3368, those crimes differ from homicide crimes in a moral sense.

. . . .

> In sum, penological theory is not adequate to justify life without parole for juvenile nonhomicide offenders. This determination; the limited culpability of juvenile nonhomicide offenders; and the severity of life without parole sentences all lead to the conclusion that the sentencing practice under consideration is cruel and unusual. This Court now holds that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole. This clear line is necessary to prevent the possibility that life without parole sentences will be imposed on juvenile nonhomicide offenders who are not sufficiently culpable to merit that punishment. Because "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood," those who were below that age when the offense was committed may not be sentenced to life without parole for a nonhomicide crime. *Roper [v. Simmons],* 543 U.S. [551] at 574, 125 S.Ct. 1183 [161 L.Ed.2d 1 (2005)].

*Graham,* 560 U.S. at 69, 75, 130 S.Ct. 2011.

The crux of the issue in Bramlett's appeal is whether, under Arkansas law, attempted capital murder is a homicide offense for purposes of *Graham.* Turning to our statutes, with regard to the term homicide, pursuant to Ark.Code Ann. § 5–

10–101, codified in Title 5, Criminal Offenses; Subtitle 2, Offenses Against the Person; Chapter 10, Homicide, "Capital ⌊7murder" provides that a person commits capital murder if under specific circumstances one "causes the death of a person." Further, Ark.Code Ann. §§ 5–10–102 to –105, "Murder in the first degree, Murder in the second degree, Manslaughter and Negligent Homicide," address varying degrees of murder and each requires that the alleged offender "causes the death of another person."

Additionally, Ark.Code Ann. § 12–12–315, Notification of Certain Deaths by the State Crime Laboratory, provides that

(a)(1) The county coroner, prosecuting attorney, and either the county sheriff or the chief of police of the municipality in which the *death of a human* being occurs shall be promptly notified by any physician, law enforcement officer, undertaker or embalmer, jailer, or coroner or by any other person present or with knowledge of the death if:

(A) *The death appears to be caused by violence or appears to be the result of a homicide or a suicide or to be accidental.*

(Emphasis added.)

Finally, our case law has defined homicide as requiring death. In *Edmonds v. State*, 34 Ark. 720 (1879), this court clearly explained *corpus delicti* of a homicide:

In cases of alleged homicide, the proof of a corpus delicti, involves that of the following points, or general facts: First, *the fact of death,* particularly as shown by the discovery of the body, or its remains; secondly, the identification of such body, or remains, as those of the person charged to have been killed; and, thirdly, the criminal agency of another, as the cause of the death.

(Emphasis added.)

In *Ware v. State*, 348 Ark. 181, 191, 75 S.W.3d 165, 171 (2002), we again discussed the *corpus delicti* rule in a homicide case and explained:

In a murder case, this rule requires the State to prove that the deceased came to his death at the hands of another person. Ferrell v. State , 325 Ark. 455, 929 S.W.2d 697 ⌊8[1996]. This court has recognized, however, that there is no requirement that medical testimony be provided regarding the cause of death. *Sims v. State,* 258 Ark. 940, 530 S.W.2d 182 (1975); Glover v. State, 211 Ark. 1002, 204 S.W.2d 373 (1947). Both elements, the fact of death and the cause of death, may be shown by strong and unequivocal circumstantial evidence such as to leave no ground for reasonable doubt; thus, where there is some proof of the corpus delicti, its weight and sufficiency is properly left to the jury. *Sims,* 258 Ark. 940, 530 S.W.2d 182 (citing *Edmonds v. State,* 34 Ark. 720 (1879)). *See also Derring v. State,* 273 Ark. 347, 619 S.W.2d 644 (1981).

Furthermore, *Black's Law Dictionary* defines homicide as "the killing of one person by another." *Black's Law Dictionary,* 751 (8th ed. 2004).

Finally, we have reviewed other state appellate courts' interpretations of *Graham* and whether an offense like the one here, attempted capital murder, qualifies as a homicide offense for purposes of *Graham.* The Florida District Court of Appeal has addressed the issue and held that a juvenile offender's life sentence for attempted murder was unconstitutional under *Graham.* In *Manuel v. State,* 48 So.3d 94, 97 (Fla.Dist.Ct.App.2010), the court explained:

The Florida Supreme Court has stated that under the definition of homicide, '[i]t is necessary for the act to result in the death of a human being. *Tipton v.*

*State,* 97 So.2d 277, 281 (Fla.1957).... We do not discount the seriousness of the offenses committed by Mr. Manuel. However, his actions did not result in the death of a human being. Thus, we are compelled to conclude that Mr. Manuel's attempted murder conviction is a 'nonhomicide' offense under both *Tipton* and *Graham.* Accordingly, *Graham*'s holding forbidding a sentence of life without parole for a juvenile nonhomicide offender applies to Mr. Manuel and requires us to vacate his life-without-parole sentences.

*Id.*; *see also McCullum v. State,* 60 So.3d 502 (Fla.Dist.Ct.App.2011) (per curiam) (holding that the appellant's life sentence for attempted second-degree murder is unconstitutional under *Graham* ); *Lawton v. State,* 109 So.3d 825, 829 (Fla.App. 3 Dist., 2013) ("We hold that the life-without-parole sentences imposed for the two counts of attempted first-degree murder in the nonhomicide case violate ... *Graham* and *Lawton* is entitled to a new sentencing hearing on those counts.") Relying upon the Delaware Supreme Court's unreported opinion in *Twyman v. State,* 2011 WL 3078822 (Del.Supr.), the State urges us to affirm the circuit court and hold that attempted capital murder is a homicide offense for purposes of *Graham.* In *Twyman,* the court held:

> First, ... under *Graham,* Attempted Murder in the First Degree appears to fall within the category of crimes for which a life sentence without parole may be imposed upon a juvenile. FN6. Second, in *Graham,* the United States Supreme Court held that the Eighth Amendment prohibits imposing a life sentence without parole on a juvenile who is sentenced "solely for a nonhomicide offense," which is not the case here. FN7. In this case, Twyman was sentenced for homicide and nonhomicide offenses, namely for his convictions on Murder in the First Degree, Attempted Murder in the First Degree, Conspiracy in the First Degree, Murder in the Second Degree and firearm offenses.

> FN6. *See Graham v. Florida,* 130 S.Ct. at 2027 (recognizing that "defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers") (emphasis added).

> FN7. In *Graham,* the sixteen-year-old defendant was convicted of armed burglary with assault or battery, a felony that carried a maximum penalty of life imprisonment, and attempted armed robbery. The trial court imposed the maximum sentence for both crimes. Because Florida does not have a parole system, the defendant's life sentence was without the possibility of parole. *Graham v. Florida,* 130 S.Ct. at 2019–20.

*Id.* at *1 nn. 6 & 7.

However, as the Delaware Supreme Court states, *Twyman* was not analogous to *Graham.* Twyman was convicted and sentenced for both nonhomicide and homicide offenses, Graham was not. Accordingly, we are not persuaded by the reasoning in *Twyman,* rather we find the Florida appellate courts' analysis on point and adopt that reasoning here.

Based on our discussion above, we hold that attempted capital murder is not a homicide offense for purposes of *Graham.* In sum, our own state law regarding the definition of homicide and the United States Supreme Court's holding in *Graham* dictate that attempted capital murder is not a homicide offense pursuant to *Graham.* Therefore, we reverse and remand this matter to the circuit court for

further proceedings consistent with this opinion.

Reversed and remanded.