**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
————————————————

ATORRUS RAINER,

      Petitioner - Appellant,

v.

MATTHEW HANSEN, Warden, Sterling
Correctional Facility, et al.,

      Respondents - Appellees.

No. 18-1427
(D.C. No. 1:18-CV-00395-RPM)
(D. Colo.)

————————————————

**ORDER**
————————————————

Before **BRISCOE, KELLY,** and **BACHARACH**, Circuit Judges.
————————————————

This matter is before the court on *Respondents' Petition for Rehearing*
("Petition"). In the Petition, Respondents ask us to grant panel rehearing to clarify that
they did not concede that the Colorado Supreme Court's decision in *People v. Rainer*,
394 P.3d 1141, 1144 (Colo. 2017) was contrary to the United States Supreme Court's
decision in *Graham v. Florida*, 560 U.S. 48, 75 (2010). Upon careful consideration, we
direct as follows.

Pursuant to Fed. R. App. P. 40, the petition for panel rehearing is granted to the
extent of the modifications in the attached revised opinion. The court's February 25, 2020

opinion is withdrawn and replaced by the attached revised opinion, which shall be filed as of today's date.

Entered for the Court

CHRISTOPHER M. WOLPERT, Clerk

FILED
United States Court of Appeals
Tenth Circuit

**March 10, 2020**

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ATORRUS RAINER,

      Petitioner - Appellant,

v.

MATTHEW HANSEN, Warden,
Sterling Correctional Facility; and
PHIL WEISER, Attorney General of
the State of Colorado,

      Respondents - Appellees.

No. 18-1427

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:18-CV-00395-RPM)**
_____

Kathleen A. Lord, Lord Law Firm, LLC, Denver, Colorado, for Petitioner-Appellant.

Ryan A. Crane, Senior Assistant Attorney General (Phillip J. Weiser, Attorney General, with him on the briefs), Office of the Attorney General for the State of Colorado, Denver, Colorado, for Respondents-Appellees.
_____

Before **BRISCOE, KELLY,** and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

The Constitution requires states to offer juveniles convicted of nonhomicide crimes "some meaningful opportunity for release based on demonstrated maturity and rehabilitation." *Graham v. Florida*, 560 U.S. 48, 75 (2010). Invoking this constitutional obligation, Mr. Atorrus Rainer sought habeas relief, claiming that the State of Colorado had deprived him of this opportunity by imposing a 112-year sentence for crimes committed when he was a juvenile. We conclude that the State has provided Mr. Rainer with the required opportunity through the combination of the Juveniles Convicted as Adults Program (JCAP) and the general parole program.

## Background

### I. The Original Sentencing

After committing crimes when he was seventeen years old, Mr. Rainer was convicted of two counts of attempted first-degree murder, two counts of first-degree assault, one count of first-degree burglary, and one count of aggravated robbery. For these crimes, the district court sentenced Mr. Rainer to 224 years in prison.

On direct appeal, the convictions were affirmed. But the Colorado Court of Appeals ordered modification of the sentences, concluding that the prison terms for attempted first-degree murder and first-degree assault should run concurrently, rather than consecutively, because the crimes

2

could have been based on identical evidence. The Colorado Court of Appeals thus modified Mr. Rainer's sentences to run for 112 years.

## II.    The Postconviction Proceedings

After the direct appeal, the Supreme Court held in *Graham v. Florida* that the Eighth Amendment prohibits life imprisonment without the possibility of parole for juveniles convicted of nonhomicide crimes. 560 U.S. 48, 75 (2010). Under *Graham*, these juveniles are entitled to a meaningful opportunity for release based on demonstrated maturity and rehabilitation. *Id.*

Shortly after *Graham* was decided, Mr. Rainer filed a postconviction motion in state district court, arguing that his 112-year sentence was unconstitutional. The state district court held that (1) *Graham* was inapplicable because it had addressed only sentences designated as life without parole, not lengthy term-of-years sentences, and (2) *Graham* did not apply retroactively.

The Colorado Court of Appeals reversed both holdings, concluding that *Graham* encompassed lengthy term-of-years sentences and applied retroactively. *People v. Rainer*, 412 P.3d 520, 531 (Colo. App. 2013). Applying these conclusions, the Colorado Court of Appeals held that Mr. Rainer lacked a meaningful opportunity for release based on demonstrated maturity and rehabilitation. *Id.* at 534–36. The Colorado Court of Appeals found that

3

- Mr. Rainer's life expectancy was between 63.8 and 72 years according to tables published by the Centers for Disease Control and

- Mr. Rainer would become eligible for parole when he was 75 years old.

*Id.* at 533–36. Because Mr. Rainer's life expectancy preceded his eligibility for parole, the Colorado Court of Appeals held that Mr. Rainer lacked a meaningful opportunity for release.

The Colorado Supreme Court reversed, holding that *Graham* applied only to juveniles sentenced to life without parole for a single crime. *People v. Rainer*, 394 P.3d 1141, 1144 (Colo. 2017). Because Mr. Rainer had a lengthy term-of-years sentence for six different offenses, the court reasoned, *Graham* did not apply. *Id.*

### III.  The Federal Habeas Proceedings

Mr. Rainer then brought a federal habeas action. In district court, the respondents acknowledged that under our precedent, the Colorado Supreme Court's decision was contrary to *Graham* because we had held that *Graham* covered lengthy prison terms as well as sentences designated as life imprisonment without parole.[1] But the respondents argued that (1) *Graham* did not apply because Mr. Rainer had been convicted of homicide offenses

---

[1]    While acknowledging our precedent, the respondents added that they were preserving a challenge to the correctness of our precedent. The respondents take the same position on appeal.

and (2) Mr. Rainer had a meaningful opportunity for release through JCAP and Colorado's general parole program. The district court held that

- *Graham* did not apply to Mr. Rainer because he was convicted of homicide offenses and

- even if *Graham* did apply, JCAP provided Mr. Rainer with a meaningful opportunity for release.

Mr. Rainer appealed, and we affirm. Although *Graham* applies, the State has provided Mr. Rainer with a meaningful opportunity for release through the combination of JCAP and the general parole program.

## Standard for Habeas Relief

We engage in de novo review of the district court's legal conclusions. *Byrd v. Workman*, 645 F.3d 1159, 1165 (10th Cir. 2011). In district court, consideration of habeas challenges is deferential to the state courts when they reject a claim on the merits. In this circumstance, 28 U.S.C. § 2254(d) prohibits habeas relief unless the state court's decision was

- contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

- based on an unreasonable determination of the facts in light of the evidence presented in state court.

28 U.S.C. § 2254(d).

The Colorado Supreme Court rejected Mr. Rainer's claim on the merits. *People v. Rainer*, 394 P.3d 1141, 1144 (Colo. 2017). Mr. Rainer was thus subject to the restriction in § 2254(d).

To determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established law, we engage in a two-step process. We first identify the clearly established law based on Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 379 (2000). We then determine whether the state court's decision was contrary to or involved an unreasonable application of the Supreme Court precedent. *Id.*

We conclude that the Colorado Supreme Court's decision was contrary to *Graham*. In *Budder v. Addison*, a state court declined to apply *Graham* to a juvenile offender sentenced to 131 years in prison, reasoning that *Graham* did not apply to lengthy term-of-years sentences. 851 F.3d 1047, 1059 (10th Cir. 2017). We held that this decision was contrary to *Graham*, reasoning that the Supreme Court had not drawn "any distinctions with regard to the . . . severity of nonhomicide crimes a defendant had committed or indicate that anything short of homicide would rise to the level of moral culpability that could justify a sentence of life without parole for a juvenile offender." *Id.* at 157–58.

Just like the state court in *Budder*, the Colorado Supreme Court declined to apply *Graham* here in light of the long term-of-years sentence for multiple crimes. *People v. Rainer*, 394 P.3d 1141, 1144 (Colo. 2017).

6

The Colorado Supreme Court's decision is thus contrary to *Graham*, and § 2254(d) does not bar relief.

## The Constitutionality of the Sentence

Though § 2254(d) does not prevent habeas relief, we conclude that Mr. Rainer's sentence complies with *Graham*.

**I.** ***Graham* applies because attempted murder is not a homicide offense.**

The respondents argue that *Graham* does not apply to Mr. Rainer because

- *Graham*'s holding is limited to juvenile offenders who were convicted of non-homicide offenses and

- Mr. Rainer's offenses, attempted first-degree murder, were homicide offenses.

The district court agreed, holding that *Graham* did not apply. We conclude that *Graham* does apply here because attempted first-degree murder is not a homicide offense.

*Graham*'s holding is limited to offenders convicted of non-homicide offenses. *Graham v. Florida*, 560 U.S. 48, 74 (2010); *see also Miller v. Alabama*, 567 U.S. 460, 473 (2012) ("To be sure, *Graham*'s flat ban on life without parole applied only to nonhomicide crimes . . . ."). The term "homicide" is widely understood as the killing of another person. *See Black's Law Dictionary* 881 (Garner editor-in-chief, 11th ed. 2019) (giving the primary definition of "homicide" as "[t]he killing of one person by

7

another"); I *Bouvier Law Dictionary* 1219 (2012) (defining "homicide" as "[c]ausing the end of the life of another human being"); Bryan A. Garner, *Dictionary of Legal Usage* 413 (3d ed. 2009) (stating that "homicide refers . . . to the lawful or unlawful killing of a person"). The Colorado Supreme Court adheres to this broad understanding of "homicide," defining it as "the killing of a human being by another." *Leopold v. People*, 95 P.2d 811, 813 (Colo. 1939).

Despite this widely recognized definition of "homicide," the district court and the respondents focus on a single sentence in *Graham*: "The Court has recognized that defendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers." 560 U.S. 48, 69 (2010). But right after this sentence, the Court focuses on the gravity of crimes leading to a victim's death:

> There is a line "between homicide and other serious violent offenses against the individual." . . . . Serious nonhomicide crimes "may be devastating in their harm . . . but 'in terms of moral depravity and of the injury to the person and to the public,' . . . they cannot be compared to murder in their 'severity and irrevocability.'" *This is because "[l]ife is over for the victim of the murderer," but for the victim of even a very serious nonhomicide crime, "life . . . is not over and normally is not beyond repair."* Although an offense like robbery or rape is "a serious crime deserving serious punishment," those crimes differ from homicide crimes in a moral sense.

*Id*. (citations omitted)[2] (emphasis added). The Court thus relied on the broad understanding of "homicide," distinguishing between crimes based on whether they cause a death. *Id*. Given this context, we conclude that the *Graham* Court was using the term "homicide" to refer to crimes causing the victim's death.

With this conclusion, we consider Colorado's version of attempted first-degree murder. This version of the crime does not require the victim's death, *see People v. Beatty*, 80 P.3d 847, 852 (Colo. App. 2003) (upholding a conviction for attempted first-degree murder when the victims did not die), so it does not constitute a homicide offense under *Graham. See, e.g.*, *Bramlett v. Hobbs*, 463 S.W.3d 283, 288 (Ark. 2015) (holding that attempted capital murder is a non-homicide crime under *Graham*); *Gridine v. State*, 175 So. 3d 672, 674 (Fla. 2015) (same); *State v. Tram*, 378 P.3d 1014, 1021 (Haw. Ct. App. 2016) (same); *State v. Hampton*, 2016 WL 6915581, at *7 (Tenn. Crim. App. Nov. 23, 2016) (unpublished) (same).[3]

---

[2]     The citations for this passage also suggest that the distinction between homicides and other crimes is based on whether the victim dies. For example, the *Graham* Court cited *Kennedy v. Louisiana*, which explains that "harm to the victim, though grave, cannot be quantified in the same way as death of the victim." 554 U.S. 407, 439 (2008).

[3]     The only court to disagree did so in an unpublished opinion without analysis. *Twyman v. State*, 26 A.3d 215 (Del. 2011) (unpublished); *see also People v. Gipson*, 34 N.E.3d 560, 576 (Ill. App. Ct. 2015) ("seriously question[ing] whether attempted murder constitutes a nonhomicide offense" but declining to decide the issue).

9

The respondents disagree, pointing to *Graham*'s (1) reliance on a study that characterized attempted murder as a homicide offense and (2) observation that Israel does not impose life without parole for non-homicide offenses, limiting this sentence to juveniles convicted of homicide or attempted homicide. 560 U.S. 48, 62–64, 80–81 (2010). But reliance on a study does not mean that the Court embraced all of the study's definitions. And the Court's observation about Israel's practice does not override the Court's ultimate holding, which is framed solely in terms of convictions for homicide. *Id.* at 80–81.

\* \* \*

We conclude that under Colorado law, attempted first-degree murder is not a homicide offense. *Graham* thus applies to Mr. Rainer, and the State must provide him with a meaningful opportunity for release based on demonstrated maturity and rehabilitation. *Graham v. Florida*, 560 U.S. 48, 75 (2010).

## II. The combination of JCAP and the general parole program gives Mr. Rainer a meaningful opportunity for release based on demonstrated maturity and rehabilitation.

Mr. Rainer argues that he lacks a meaningful opportunity for release based on demonstrated maturity and rehabilitation. In our view, however, this opportunity exists through the combination of JCAP and the State's general parole program.

10

## A. Mr. Rainer's Opportunities for Release Between the Ages of 42 and 60

We first examine Mr. Rainer's opportunities for release between the ages of 42 and 60.[4] When Mr. Rainer is 42, he will become eligible for release through JCAP, the state's specialized parole program for juvenile offenders. This program is generally restricted to juvenile offenders who have been convicted as adults and have served twenty years of their prison term. Colo. Rev. Stat. § 17-34-101(1)(a)(I).[5] Those offenders can apply to JCAP if they have participated in programs offered by the Colorado Department of Corrections, shown responsibility and commitment in these programs, accepted responsibility for the criminal behavior underlying their offenses, and demonstrated growth and change through developmental maturity and quantifiable good behavior during the course of their incarceration. Colo. Rev. Stat. § 17-34-101(1)(a)(I).

Mr. Rainer will be eligible to apply for JCAP at age 39. If he is accepted and completes the program in the anticipated three-year period, Colo. Rev. Stat. § 17-34-102(3), he could obtain release by the age of 42.

---

[4]   All references to Mr. Rainer's age are approximations because his birth date does not appear in the record.

[5]   Though juvenile offenders normally must serve only twenty years of their sentence, juvenile offenders convicted of certain types of first-degree murder must first serve twenty-five years of their sentence. Colo. Rev. Stat. § 17-34-101(1)(a)(III).

If his application is denied, he could re-apply every three years. Colo. Rev. Stat. § 17-34-101(5). From ages 42 to 60, Mr. Rainer could obtain seven opportunities for release through JCAP.

Mr. Rainer argues that JCAP does not provide a meaningful opportunity for release because the governor must ultimately grant the offender's parole application upon completion of the program. According to Mr. Rainer, this program resembles executive clemency, which *Graham* regarded as inadequate. 560 U.S. 48, 70, 82 (2010).

Executive clemency is inadequate because it affords the governor complete discretion to approve or deny an offender's application. *See, e.g.*, Executive Order B-002-99 § 3(A) (Feb. 16, 1999) (Colorado's executive clemency program). Unlike executive clemency, JCAP constrains this discretion by requiring the governor to consider (1) the existence of extraordinary mitigating circumstances and (2) the compatibility of early release with societal safety and welfare. Colo. Rev. Stat. § 17-22.5-403(4.5)(a). Moreover, JCAP creates a presumption in favor of early parole if the offender has completed the program and served at least twenty-five years of the sentence. Colo. Rev. Stat. § 17-34-102(8). Mr. Rainer could qualify for this presumption by age 44. JCAP thus provides Mr. Rainer an opportunity for early release despite the need for the governor's approval. *See Carter v. State*, 192 A.3d 695, 710–11, 723–24 (Md. 2018) (holding that *Graham* was satisfied in Maryland by an executive order that provided

12

for parole because the governor's discretion was constrained by the need to consider specific factors).

Mr. Rainer also questions the practical availability of JCAP. As he points out, consideration of his application for entry into JCAP could include inquiry into the seriousness of his offenses and the impact on the victims. Colo. Rev. Stat. § 17-34-101(2). But the record does not suggest that JCAP will become unavailable to Mr. Rainer based on the nature of the offense or the impact on the victims. A 2019 status report shows that seventeen of the JCAP applications (42%) were approved. Twenty-three (58%) were rejected. Colo. Dep't of Corrections, SB 16-180 Status Report Juvenile Re-Integration Program, Dec. 2019.[6] Of the twenty-three unsuccessful applicants, only one applicant was rejected because of the nature of the offense. The report suggests that the nature of the offense rarely bars participation in JCAP. We thus have little reason to expect rejection of Mr. Rainer's application for JCAP based on the seriousness of the offense or impact on the victims.[7]

---

[6] Mr. Rainer asks us to remand to the district court for an evidentiary hearing that would address the statistical data. But Mr. Rainer did not object to our consideration of the information, and he had an opportunity to submit evidence to the district court and to our court on the administration of JCAP.

[7] We base our assessment of JCAP on the current evidentiary record. Subsequent data on the administration of JCAP could affect how we assess

13

**B.    Mr. Rainer's Opportunities for Release Starting at Age 60**

Even if Mr. Rainer does not obtain early release through JCAP, he could become eligible for the state's general parole program at 60 if he earns all available good-time credits.[8]

Mr. Rainer argues that even if eligibility comes at age 60, Colorado's general parole program would not satisfy *Graham*. We need not decide whether Colorado's general parole program satisfies *Graham*. Even if it doesn't, the program gives Mr. Rainer opportunities for early release beyond the opportunities available under JCAP.

Mr. Rainer downplays the significance of the opportunity for parole, pointing to its discretionary nature. We reject this contention. Though parole in Colorado is ordinarily discretionary, *People v. Davis*, 429 P.3d 82, 94 (Colo. App. 2018), it may still comply with *Graham*. In *Graham*, the

---

its creation of opportunities for early release based on demonstrated maturity and rehabilitation.

[8]     The parties disagree on when Mr. Rainer will become eligible for parole. The government says 60; Mr. Rainer says 75. But this apparent disagreement is illusory. As Mr. Rainer observes, the Colorado Court of Appeals predicted that he would become eligible for parole at 75. *See* Part II, above. Mr. Rainer treats this prediction as a factual finding and asks us to presume its correctness. But the Colorado Court of Appeals's prediction does not consider (1) the good-time credits that Mr. Rainer earned since the Court of Appeals's issuance of an opinion or (2) the credits that he could earn in the future. The opportunity for these credits exists as a matter of law. Colo. Rev. Stat. § 17-22.5-405. We thus consider these credits and need not decide whether we should apply the presumption of correctness to the Court of Appeals's prediction.

14

Court observed that a state was not required to release juvenile offenders; the state needed only to guarantee a meaningful opportunity for release. 560 U.S. at 74–75. A discretionary parole system can thus comply with *Graham*.

Mr. Rainer contends that the severity of the crime is the primary reason for denying parole. He bases this argument on a misreading of the parole board's 2018 report. This report states that the most common reason for denying parole is "the severity of the crime of conviction or behaviors that represent risks to the public (for example, institutional violations and violence)." Colo. Div. of Crim. Justice, Analysis of Colorado State Board of Parole Decisions: FY 2017 Report at 8 (2018). From this evidence, one can't tell whether an offender is being rejected because of the severity of the crime or a lack of rehabilitation.[9]

Mr. Rainer also perceives shortcomings in Colorado's procedural safeguards for parole hearings. As Mr. Rainer points out, the state does decline to provide some procedural safeguards. But Mr. Rainer has not

---

[9] Under Colorado's criteria for parole, the risk of recidivism constitutes the parole board's "central consideration." Colo. Rev. Stat. § 17-22.5-404(1)(a); 8 Colo. Code Regs. § 1511-1, 6.01(A). This focus on the risk of recidivism allows the state parole board to promote integration into the community, an objective embraced in *Graham*. 560 U.S. at 74–75.

15

explained how the denial of these safeguards prevents a meaningful opportunity to demonstrate maturity and rehabilitation.[10]

Mr. Rainer instead points to the results in other cases, stating that the Colorado Court of Appeals found that 90% of parole applications are denied the first time. For this finding, the court relied on a state audit on parole decisions through 2008. The audit does not reveal any information on (1) which inmates are denied parole or (2) why they are denied parole. For example, the audit does not show whether any of the applicants were juveniles when they committed their crimes. The omission of this data is significant because under Colorado law, the parole board can consider juvenile status at the time of the offense as a mitigating factor supporting parole. *People v. Davis*, 429 P.3d 82, 95 (Colo. Ct. App. 2018).

Similar omissions render the habeas record sparse on (1) the characteristics of the offenders who are denied parole the first time and (2) the reasons for the denial of first-time applications for parole. Given the sparsity of evidence in these two areas, the Colorado Court of Appeals's reference to the 90% statistic does not undermine the

---

[10] The parties disagree on whether to assess the general parole program based on (1) when the offender becomes eligible for parole or (2) how long the offender is expected to live. But we need not resolve this disagreement.

significance of Mr. Rainer's opportunities for early release through Colorado's general parole program.[11]

## Conclusion

Under *Graham v. Florida*, the State of Colorado must provide Mr. Rainer with a meaningful opportunity for early release based on demonstrated maturity and rehabilitation. Mr. Rainer has not shown a failure by the State to provide this opportunity. Under JCAP, almost half of the inmates to apply have been accepted. If Mr. Rainer obtains acceptance into the program when he becomes eligible, he could obtain release by age 42. Even if he does not obtain release through JCAP, he could obtain release by age 60 through the general parole program.

In combination, JCAP and the general parole program supply Mr. Rainer with a meaningful opportunity for early release based on demonstrated maturity and rehabilitation. We thus affirm the district court's denial of habeas relief.

---

[11] In his reply brief, Mr. Rainer asks us to remand for an evidentiary hearing based on Colorado's general parole program. We express no opinion on whether the general parole program alone would suffice; we conclude only that *Graham* is satisfied by the combination of JCAP and Colorado's general parole program. *See* p. 5, above. In any event Mr. Rainer's opening brief did not address the need for an evidentiary hearing, and he did not adequately develop this argument in his reply brief. *See United States v. Mendoza*, 468 F.3d 1256, 1260 (10th Cir. 2006) (reply brief too late to present an argument for reversal); *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013) (declining to consider an inadequately developed argument).

17